John Wesley Williams # V-54088
California State Prison - Los Angeles
P.O. Box 4670
Lancaster, California 93539
In Pro Se.

FILED
JAN 1 1 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JS 4th 555

United States Department of Justice
Federal Bureau of Investigations

CV 08  0160

JSW

(PR)

John. W. Williams,
        Plaintiff,

    vs.

Warden F.C. Haws;
Chief Deputy Warden
D'Fallon, Associate
Warden Woodford,
Correctional Captain L.
Packer, Correctional
Lieutenant Beltran,
Senior Psychologist E.
McGuinness, Correctional
Counselor II. J. Curiel,
Correctional Counselor I
Cruz, Correctional
Officer A. Cook, and
Licensed Clinical
Social Worker J.
Morrissette.
        Defendants.

Case No. _____

832.5 Citizen's Complaint
Pursuant To The Civil Rights
Act of 1964 For Conspiracy
Against Rights, Retaliation,
and Cruel and Unusual
Punishment in violation of Title
18 (United States Code) Section's
241, 242, and 245; 151; 6TH; 8TH;
and 14TH Amendment's To The
United States Constitution
with organized criminal
activity and Malefeasance



1

## Introduction

Plaintiff is an inmate currently incarcerated at the California State Prison - Los Angeles (CSP-LA) where Defendants, and each of them, have acted in concert and conspired to injure, oppress, threaten, and intimidate Plaintiff in the free exercise or enjoyment of rights and privileges secured to him by the Constitution and laws of the United States and because of Plaintiff having exercised the same, in violation of the First Amendment to the U.S. Constitution and United States Code Title 18, Section(s) 241, 242, and 245.

Defendants, and each of them, have also violated Section 1986 of Title 42 of the United States Code, which provides that every person who knows that the wrongs proscribed by 42 U.S.C. Section 1985 are about to be committed, but fails to prevent or attempt to prevent them, shall be liable to the party injured. 42 U.S.C. Section 1985 protects against (1) preventing an officer from performing his duties; (2) obstructing justice or intimidating witnesses; or (3) conspiring to deprive persons of rights and privileges protected under the law of any state or territory. See 42 U.S.C. Section 1985(1)-(3). A cause of action is not provided under Section 1986 absent a valid claim for relief under Section

2

1  DEFENDANTS; AND EACH OF THEM, HAVE ACTED IN
2  CONCERT AND USED THE CUSTOMS, HABITS, AND PRACTICES OF
3  THE CODE OF SILENCE (WHICH OPERATES TO CONCEAL
4  WRONGDOINGS BY CORRECTIONAL OFFICIALS: SEE EXHIBIT A
5  HEREIN ) TO IMPEDE, HINDER, OBSTRUCT, HARASS,
6  RETALIATE, DEFEAT, AND THWART, IN EVERY MANNER,
7  PLAINTIFF'S ATTEMPTS WHILE IN THE DUE COURSE OF
8  JUSTICE WITH THE INTENT TO DENY PLAINTIFF THE EQUAL
9  PROTECTION OF THE LAWS IN VIOLATION OF 42 U.S.C.A.
10 SECTION 1985 OF THE CIVIL RIGHTS ACT. EVEN AFTER
11 TEN (10) YEARS, THE FEDERAL COURT CONTINUES TO ENFORCE
12 DECADE-OLD CALIFORNIA PRISON GUARD "CODE OF SILENCE"
13 RULING. SEE ALSO EXHIBIT A HEREIN.
14
15
16         STATEMENT OF FACTS
17
18 (1.)  ON MARCH 23, 2007, PLAINTIFF ARRIVED AT CSP-LA AS
19 A PARTICIPANT IN THE ENHANCED OUT PATIENT (EOP)
20 MENTAL HEALTH PROGRAM AND QUICKLY DISCOVERED THAT
21 DEFENDANT HAWS AUTHORIZED, CONDONED, AND USED
22 THE CODE OF SILENCE TO ALLOW SUBORDINATES TO USE
23 EXCESSIVE FORCE AND FELONY ASSAULT EOP INMATES. IN
24 ADDITION, TO FURTHER CONCEAL THE USE OF EXCESSIVE
25 FORCE AND FELONY ASSAULT ON EOP INMATES, DEFENDANT
26 HAWS USED A SOPHISTICATED PRACTICE OF CRIMINAL
27 MALEFESANCE TO CHARGE THE EOP INMATE/VICTIM WITH
28 "BATTERY ON A PEACE OFFICER" FALSELY CLAIMING SO

1  WHILE TEACHING, CONDONING, AND allowing SUBORDINATES
2  To do THE SAME.
3     (2.)  On April 19, 2007, Plaintiff ASKED DEFENDANT
4  McGUINNESS WHY DEFENDANT WAS allowing, THEREBY
5  ignoring THE ongoing and repeated USE OF EXCESSIVE
6  Force and Felony assault on EOP inmates, as DEFENDANT
7  McGUINNESS is THE Senior Psychologist in charge of
8  and over THE EOP MENTAL HEALTH Program, AND
9  McGUINNESS responded by displaying distaste and
10  offense To my concerns THEN advised That I "ignore"
11  DEFENDANT HALL'S criminal operations IF I "wanted
12  To remain in THE EOP Program."
13     (3.)  THIS incident Was witnessed by inmate Timmy
14  McHall # J-01733 (SEE ATTACHED declaration at Exhibit
15  (B herein) and on April 24, 2007, Plaintiff filed an
16  Administrative inmate APPEAL (602 Appeal) related To
17  THE incident involving DEFENDANT McGUINNESS and
18  EACH level of review and investigations Was
19  Obstructed, ignored, and denied. SEE Also Exhibit (G
20  herein.
21     (4.)  In June 2007, Plaintiff filed a civil rights
22  Complaint PURSUANT To THE civil Rights ACT of 1964 WITH
23  THE United STATES DEPARTMENT of JUSTICE, Federal
24  Bureau of Investigation in order To Prohibit
25  DEFENDANT HALLS Unlawful, Unconstitutional, and
26  Criminal operations of CSP LA, and on July 10, 2007,
27  Plaintiff received THE following response from
28

1  CONNIE E. SMITH, SUPERVISORY SENIOR RESIDENT AGENT,
2  ATTACHED AS _Exhibit C_ HEREIN.
3  (5.) SINCE RECEIVING RESPONSE FROM SUPERVISORY SENIOR
4  RESIDENT AGENT CONNIE E. SMITH PLAINTIFF HAS REPORTED
5  ADDITIONAL EXCESSIVE FORCE AND FELONY ASSULT ON E&P
6  INMATE INCIDENTS TO AGENT SMITH, ALL OF WHICH WERE
7  IMPOSED MALICIOUSLY, THEN CONCEALED BY DEFENDANT
8  HAWS AND THE INFAMOUS CODE OF SILENCE.
9  (6.)  IMMEDIATELY FOLLOWING PLAINTIFF'S CIVIL RIGHTS
10 COMPLAINT TO SENIOR AGENT C. SMITH OF THE UNITED
11 STATES DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF
12 INVESTIGATION, DEFENDANT'S FALLON, CURIEL, AND AREF,
13 ACTING ON BEHALF OF DEFENDANT HAWS, BEGAN
14 INTENTIONALLY OBSTRUCTING AND FUSTRATING PLAINTIFF'S
15 ACCESS TO THE ADMINISTRATIVE INMATE 602 APPEAL
16 SYSTEM BY REFUSING TO PROCESS ANY AND ALL INMATE
17 APPEALS WHICH IDENTIFIED OR EXPOSED ANY OF THE
18 CRIMINAL, UNLAWFUL, AND UNCONSTITUTIONAL OPERATIONS
19 AND PRACTICES BY DEFENDANT HAWS AND HIS
20 SUBORDINATES, SO PLAINTIFF'S MOTHER (FLORA LEE) FILED
21 CITIZEN'S COMPLAINT AGAINST DEFENDANT CURIEL WITH
22 DEFENDANT HAWS PURSUANT TO CALIFORNIA PENAL CODE
23 SECTION 832.5, AND DEFENDANT HAWS VIOLATED STATE
24 LAW BY ALLOWING DEFENDANT CURIEL TO RESPOND TO A
25 CITIZEN'S COMPLAINT RELATED TO HIS OWN MISCONDUCT,
26 AND SUCH RESPONSE BY DEFENDANT CURIEL WAS NOT
27 ONLY UNLAWFUL, BUT INTENTIONALLY MISLEADING IN AN
28

1  EFFORT TO CONTINUE THE PRACTICE OF THE CODE OF SILENCE.

2  SEE Exhibit D herein.

3  (7.)  In July 2007, Plaintiff was Summoned To A

4  Classification hearing WHERE DEFENDANT McGUINNESS

5  Was THE CHIEF CHAIR PERSON, and instructed A

6  subordinate/Social worker T. Rodriguez To initiate

7  procedures WHICH would Barr Plaintiff From THE EOP

8  MENTAL HEALTH program by lowering Plaintiff's mental

9  health level of care.

10  (8.)  DEFENDANT McGUINNESS ATTEMPTED To hide

11  her Malicious And retaliatory removal of Plaintiff

12  FROM THE EOP program behind a legitimate clinical

13  decision and THE CODE OF SILENCE however in

14  addition To being represented by ATTORNEYS who are

15  appointed and/or responsible To Ensure compliance

16  WITH THE Coleman v. Schwarzenegger order,

17  Plaintiff is also a class member in THE Pending

18  HECKER v. California Department of Corrections and

19  Rehabilitation, ET AL, civil action at CASE No. 2:05-

20  CV-02441-LKK-JJM before THE United States

21  DISTRICT Court, EASTERN DISTRICT of California, And

22  represented by THE Legal Aid Society-Employment

23  LAW CENTER of San Francisco (Legal Aid Society), and

24  AFTER several reports To THE legal aid Society

25  regarding unlawful, unconstitutional, And Criminal

26  MALEFEASANCE being imposed on Plaintiff by DEFENDANT

27  McGuinness (including OTHERS) THE LEGAL AID SOCIETY

28

6.

1 | investigated, and concluded that Plaintiff's removal
2 | from the EOP program was being done by Defendant
3 | McGuinness in retaliation for Plaintiff's legal activity
4 | which is protected under the U.S. Constitution. SEE
5 | Exhibit E herein.

(9.) Plaintiff was also provided with a declaration
7 | by the legal aid society in the HECKER V. CACR as a
8 | direct result of Defendant McGuinness (including
9 | others) harassing and oppressing malefeasance
10 | directed toward Plaintiff for legal activity (also SEE
11 | Exhibit E herein) all of which Defendant haws
12 | ignored in an effort to foster the code of silence.

(10.) On August 15, 2007, Plaintiff filed an inmate 602
14 | appeal against Defendant Curiel for refusing to process
15 | Plaintiff's inmate appeals for reasons totally contrary to
16 | State law and Defendant's haws and Fallon
17 | repeatedly instructed Defendant Curiel to thwart
18 | and frustrate Plaintiff's appeal efforts so that
19 | Defendants' can continue to foster the code of silence.
20 | SEE Exhibit F herein.

(11.) In mid August 2007, Defendant Morrissette
22 | began expressing personal interest in Plaintiff's various
23 | litigations and legal activities. Defendant also
24 | requested education and information concerning the
25 | code of silence and the green wall prison guard gang,
26 | and Plaintiff provided Defendant Morrissette with
27 | several news clippings and articles related to such.

1   (12) In Early September 2007, Defendant Morrissette

2   Sought legal advice and assistance from plaintiff,

3   advising of being "Food Poisoned" while dining out with

4   "Friends" at a "Marie Calenders" restaurant. Defendant

5   informed plaintiff that she (Morrissette) did not

6   want to sue for money damages, but only wanted the

7   restaurant to "accept responsibility" and cover

8   "medical expenses" and defendant's three (3) days "loss of

9   work."

10  (13.) Defendant Morrissette then asked plaintiff

11  to "draft" the required letter for the restaurant in

12  in question, and plaintiff did so on September 19,

13  2007, and delivered such to Defendant Morrissette

14  on September 21, 2007. SEE Exhibit g herein.

15  (14) Between September 24, through 28, 2007, plaintiff

16  provided Defendant Morrissette with various other

17  legal documents which defendant requested that

18  plaintiff photocopy prior to, and during this exchange

19  plaintiff mistakenly neglected to remove a letter

20  addressed to "lady God" and also attached at

21  Exhibit g herein.

22

23  (15.) Upon discovering the letter addressed and

24  intended for "lady God" (along with other legal

25  documents) had been given to Defendant Morrissette

26  in error, plaintiff advised Defendant of this error,

27  and on three seperate occasions between October

28  1, and 16, 2007, Defendant Morrissette advised

1  Plaintiff that "I forgot to put it in my bag, I'll
2  remember tomorrow." on October 16, 2007, while
3  waiting with inmate Wilson K-66474, to be admitted
4  into the facility's law library, Defendant Morrissette
5  again claimed to have "forgot" to put Plaintiff's
6  legal documents and letter to "lady cool" in her
7  bag to return to Plaintiff.

8  (16.) On October 22, 2007, Plaintiff had a one
9  on one interview with Defendant Mcguinness
10 regarding an EOP inmate who had been recently
11 seen subjected to excessive force, and during
12 the interview Plaintiff advised Mcguinness of
13 Defendant Morrissette's constant excuse in
14 returning Plaintiff's legal documents, and
15 because Mcguinness is Morrissette's supervisor,
16 Plaintiff asked Defendant Mcguinness for
17 assistance in having Morrissette "remember"
18 to return Plaintiffs legal documents.

19 (17.) On October 23, 2007, Defendant Morrissette
20 gave Plaintiffs legal documents to Defendant
21 Mcguinness, Defendant Mcguinness then took the
22 documents to Defendant Cruz (who is of lower
23 rank) where both Mcguinness and Cruz then
24 initiated the conspiracy against Plaintiff.

25 (18.) Defendant's Mcguinness and Cruz first
26 advised, manipulated, and instructed Defendant
27 Morrissette into falsely claiming to be "scared"

9.

1  of Plaintiff in order to have Plaintiff removed from
2  the EOP program.

3  (19.)  Defendant's McGuinness and Cruz then
4  went to Defendant Parker to gain permission
5  and authorization to oppress Plaintiff with this
6  conspiracy however, Defendant Parker did not
7  act on defendant's fabrication until Defendant
8  Cruz began creating a bandwagon for other
9  officers to advise Defendant Parker that
10  Morrissette allegedly "feared for her safety."

11  (20.)  On the evening of October 24, 2007, officer
12  Diaz advised Plaintiff that "Cruz is trying to get
13  you put in the hole. I don't know what you did to
14  him but be careful." Officer Diaz then provided
15  Plaintiff with Exhibit H herein which is a hand-
16  written note written by Defendant Cruz to
17  Defendant Parker where Cruz continued to
18  convince, persuade, and manipulate Defendant
19  Parker into enforcing the order which would
20  concur with defendant's conspiracy and cause
21  Plaintiff's suffering.

22  (21.)  On the morning of October 25, 2007, Plaintiff
23  was advised of being placed in administrative
24  segregation (Ad Seg) due to being a "threat" to the
25  safety and security of the institution (see also
26  Exhibit H herein) and while so, Lieutenant Campbell,
27  Sergeant Huerta, and officer Wergquist boasted about

10.

1  how "Wonderful" it FELT To get PlaintifF "off The
2  YArd" AFTer "all The officers" PlaintifF reported For
3  misconduct And maLEFeasAnce. Theese officials Then
4  Went on To brag about how PlaintifF "could now" BE
5  SENT To "Pelican bay" So Things on D·Facility could
6  "go back To normal."

7  (22.) on october 26, 2007, DEFENdant ParKer came
8  To review PlaintifF's PlacEmEnt in ad·seg order, And
9  informed That DEFENdant morrisseTTE further
10 reported and alleged That PlaintifF is known To Stand
11 outside her group classes STalking her, and That
12 PlaintifF is krated a Threat To morrissETTE. PlaintifF
13 was already depressed and humiliated From being
14 Placed in segregation and advised DEFENdant
15 ParKer of being confused due To The EFFEct of
16 PSYcHiATric medications however, DEFENdant
17 ParKer made no EFFort To advise PlaintifF of his
18 rights or ensure That PlaintifF was assigned a
19 StafF assistance.
20

21 (23.) on october 29, 2007, PlaintifF was
22 served with a copy of a disciplinary rules violation
23 report (RVR) written by DEFENdant morrissETTE
24 charging PlaintifF with "Unlawful Influence in
25 violation of Cal. Code of Reg., TiTle 15 Section 3013
26 which provides That "inmates may not aTTEmpt To
27 gain special consideration or Favor From other inmates,
28 employees, institution visitors or any other person

11.

1   by THE USE OF BRIBERY, THREAT, or oTHER UNLAWFUL MEANS."

2   DEFendant CybaK issued PlaintiFF THE RVR and also

3   advised of being THE INVESTIGATIVE EmPloyEE (I. E)

4   assigned To gather FACTS For THE SENIOR HEARING OFFICER

5   (SHO) WHO Would conduct THE disciplinary HEARing and

6   ProcEEdings on THE RVR. SEE EXHIBIT I herein.

7   (24.)    DEFendant MORRISSETTE'S RVR alleged THAT

8   on October 12, 2007, PlaintiFF simply handed her a

9   "PACKET oF PAPERWORK" WITHOUT CAUSE, REASON, or

10  JUSTIFICATION, as if PlaintiFF committed such an act at

11  random. DEFendant mORRISSETTE also alleged That the

12  LETTER addressed To "lady Cool" at Exhibit 9 herein,

13  WAS "SECRETED in a Pack oF PAPERWORK," and That as she

14  read THE LETTER SHE immediately determined That it

15  WAS WRITTEN To her BECAUSE "IT contained SEVEral

16  PERSONAL comments That only APPlied" To dEFendant.

17  (25.)    on NOVEmber 30, 2007, DEFendant WinFord

18  CAME inside THE adSEg housing UNit and responded To

19  PlaintiFF's request To SPEAK WiTh him concerning

20  PlaintiFF's placement in SEgregation. PlaintiFF advised

21  DEFendant WinFord oF THE issues and Facts raised by

22  THE instant complaint, including THE Fact THAT THE

23  CaliFornia State PrisoN-LoS ANgELES administration was

24  allowing DEFendant MORRISSETTE To Falsely hide

25  bEHind a SaFETY concern as an act of retaliation

26  Against PlaintiFF For various complaints To THE U.S.

27  dEPARTment oF JUSTICE, PARTICIPATing in THE HECKER

1   V. cdcR lawsuit, and for advocating for other edp
2   inmates. Defendant Walford gave Plaintiff a sinister
3   smile and stated "your right, your absolutely right mr.
4   Williams, but we had to slow you down some kind of
5   way," and walked off, leaving Plaintiff oppressed
6   and in distress. The entire exchange with Defendant
7   Walford was witnessed by inmate E. Dapper who was
8   housed directly next door to Plaintiff. SEE Exhibit
9   J herein

10  (26.)    on or about November 30, 2007, Defendant
11  Cobak came to interview Plaintiff in order to began
12  conducting investigation into the allegations alleged by
13  Defendant Morrissette, and Plaintiff presented
14  Cobak with written questions for witnesses
15  Defendant's Morrissette, mcGuinness, and Parker and
16  inmate's archie Harmon # 52167, and D. Wilson # K-66474
17  SEE also Exhibit J herein.
18
19  (27.)   When Plaintiff provided Defendant Cobak with
20  written questions for witnesses Cobak made a copy
21  of such for Plaintiff while keeping the original, and
22  because inmate A. Harmon was also in ad seg, Cobak
23  conducted a fact finding interview with inmate A.
24  Harmon the same day receiving written questions for
25  witnesses from Plaintiff.
26  (28.)  on November 1, 2007, Plaintiff was taken
27  before the ad seg classification committee where
28  Defendant Haws personally sat as chief chair

13.

1  PERSON OVER THE COMMITTEE. PLAINTIFF PRESENTED A

2  WRITTEN REQUEST FOR WITNESSES AND DOCUMENTARY

3  EVIDENCE DURING THE CLASSIFICATION HEARING AS PROVIDED

4  BY CAL. CODE OF REG., TITLE 15 SECTION 3337(J) AND

5  3338(a) THROUGH (i), IN ORDER TO PROVE TO THE COMMITTEE

6  THAT PLAINTIFF'S RETENTION IN ad SEG WAS NOT WARRANTED.

7  DEFENDANT HAWS RESPONDED BY ADVISING THE

8  COMMITTEE THAT PLAINTIFF IS "CONFUSED" AND HAD NO

9  RIGHT TO CALL WITNESSES OR INTRODUCE EVIDENCE AT A

10 CLASSIFICATION HEARING, AND THAT PLAINTIFF ONLY HAD SUCH

11 RIGHTS DURING A DISCIPLINARY HEARING ON A RVR. PLAINTIFF

12 THEN REQUESTED THE COMMITTEE TO TURN TO SECTION

13 3337(J) IN THE TITLE 15, AND DEFENDANT HAWS

14 QUICKLY BECAME ANGRY AND STATED "I don't CARE WHAT

15 THE RULES SAY, YOUR STAYING IN THE HOLE," AND ORDERED

16 PLAINTIFF'S UNLAWFUL RETENTION IN ad SEG FOR 60 DAYS.

17 SEE EXHIBIT K HEREIN.

18

19   (29.)  ON OR ABOUT NOVEMBER 7, 2007, JUST SEVEN OR

20 SO DAYS AFTER INMATE WITNESS A. HARMON WAS

21 INTERVIEWED BY DEFENDANT KRAK and disclosed FACTS

22 and INFORMATION WHICH PROVED THAT DEFENDANT

23 MORRISSETTE disclosed PERSONAL INFORMATION ABOUT

24 HERSELF TO PLAINTIFF (AND OTHER INMATES) PRIOR TO THE

25 DATE OF RECEIVING THE "PACKET OF DOCUMENTS" FROM

26 PLAINTIFF, AND THE FACT THAT HE (INMATE HARMON)

27 WITNESSED DEFENDANT MORRISSETTE SEEK LEGAL

28 ADVICE AND ASSISTANCE FROM PLAINTIFF, INMATE HARMON

14.

1  WAS SUBJECTED TO RETALIATION BY BEING ISSUED A BOGUS

2  RULES VIOLATION REPORT AUTHORED BY DEFENDANT

3  MORRISSETTE, APPROVED BY DEFENDANT PARKER, AND

4  ISSUED BY DEFENDANT CODAK. SEE ALSO EXHIBIT K

5  HEREIN.

6  (30.)  ON NOVEMBER 13, 2007, DEFENDANT CODAK

7  PROVIDED PLAINTIFF WITH A COPY OF THE INVESTIGATIVE

8  REPORT RELATED TO THE ALLEGATIONS ALLEGED BY DEFENDANT

9  MORRISSETTE AND THE FIRST THING PLAINTIFF NOTICED WAS

10  THAT THE STATEMENTS AND FACTS GATHERED FROM INMATES

11  A. HARMON AND D. WILSON WERE NOT PLACED IN THE

12  REPORT. SEE EXHIBIT L HEREIN.

13

14  (31.)  PLAINTIFF THEN NOTICED THAT DEFENDANT

15  MORRISSETTE WAS ALLOWED TO WITHHELD AND CONCEAL

16  FACTS BY PLEA OF IGNORANCE OR REFUSAL TO ANSWER

17  QUESTIONS RELATED TO HER OWN DISCIPLINARY REPORT

18  FILED AGAINST PLAINTIFF. MORRISSETTE NOT ONLY

19  FABRICATED BY DENYING THAT PLAINTIFF HAD PROVIDED

20  LEGAL ADVICE AND ASSISTANCE BUT ALSO INDICATED THAT

21  THE DAY IN QUESTION WAS THE FIRST AND ONLY TIME

22  PLAINTIFF HAD EVER PROVIDED AND/OR GAVE DEFENDANT

23  LEGAL DOCUMENTS.

24  (32.)  PLAINTIFF NEED ALSO POINT OUT THAT WHEN ASKED AT

25  QUESTION #7 THE EVIDENCE RELIED UPON IN ALLEGING THAT

26  PLAINTIFF IS A THREAT DEFENDANT SIMPLY STATED THAT SHE

27  WAS "UNCOMFORTABLE," AT QUESTION #12, CONCERNING THE

28  RVR WRITTEN WHERE DEFENDANT STATED "AS I READ THE

subject letter I immediately determined that it had been written to me, as it contained several personal comments that applied only to me." DEFENDANT refused to define and/or explain the "several personal comments" alleged, and at question #14, when asked how Plaintiff became aware of the information which Defendant described as "several personal comments," MORRISSETTE falsely claims that Plaintiff used his "imagination" to determine the specific details of her food poisoning. SEE EXHIBIT L herein.

(33.) On November 21, 2007, Plaintiff was called for the disciplinary hearing on the report written by Defendant MORRISSETTE, and Defendant BELTRAN was the Senior Hearing Officer (SHO). Plaintiff explained to Defendant BELTRAN how inmate witnesses statements were missing from the report and requested that theese inmate witnesses be allowed to be heard on Plaintiff's behalf. Plaintiff also requested that Defendant MORRISSETTEE be present at the hearing, all of which Defendant BELTRAN denied.

(34.) Plaintiff then explained to Defendant BELTRAN the mistake in giving Defendant MORRISSETTE the letter addressed to "lady Cool" and pointed out that the letter could not have been intended for Defendant MORRISSETTE because (1) the letter makes no mention to MORRISSETTE'S experience with food poisoning, and (2) Plaintiff has never visited with MORRISSETTE,

16.

1  Plaintiff has never written to Morrissette or called
2  her collect, and plaintiff does not know any of
3  Morrissette's family or friends.
4  (35.)    In response to Plaintiff's defense and
5  explanation, Defendant Sutton stated "I believe
6  you Mr. Williams, but I'm going to find you guilty
7  because "THEY" want you transfered."
8  (36.)  Since October 25, 2007, Plaintiff has been
9  unlawfully held in ad seg under inhumane
10 conditions of confinement due to inadequate food,
11 clothing, medical care, and sanitation, and this is
12 intended as punishment for Plaintiff's legal activity.
13
14 (37.)  Plaintiff has been unable to attend exercise
15 yard in ad seg due to not being provided with winter
16 clothing to ward off the cold. In addition, Defendant
17 Haws has a policy where African American ad seg
18 inmates are not allowed to comb their hair and after
19 a few weeks of such racial hate and discrimination
20 Plaintiff hair is matted and tangled, and Defendant
21 Haws permitts his subordinates to make jokes about
22 Plaintiff's appearence, so Plaintiff has been not only
23 humiliated, but embarrased to leave his cell, and
24 this is intended as punishment for Plaintiff's legal
25 activity.
26 (38.)  On October 25, 2007, Plaintiff filed an inmate
27 602 appeal related to the mistreatment imposed while
28 being placed in ad seg, and as of date, Defendant

17.

1 | Curiel has refused to process Plaintiff's administrative
2 | appeal according to State law.

3 | (39.) On November 1, 2007, Plaintiff filed an inmate
4 | 602 appeal related to the malefeance imposed by
5 | Defendant's McGuinness, Cruz, and Morrissette, and
6 | as of date, Defendant Curiel has refused to process
7 | Plaintiff's administrative appeal according to State law.

8 | (40.) On November 7, 2007, Plaintiff filed an inmate
9 | 602 appeal related to the misconduct imposed by
10 | Defendant Walford, and as of date, Defendant Curiel
11 | has refused to process Plaintiff's administrative
12 | appeal according to State law.

13 | (41.) On November 16, 2007, Plaintiff filed an inmate
14 |
15 | 602 appeal related to the unlawful committee
16 | imposed by Defendant Halls, and as of date,
17 | Defendant Curiel has refused to process Plaintiff's
18 | administrative appeal according to State law.

19 | (42.) On November 23, 2007, Plaintiff filed an inmate
20 | appeal related to the misconduct imposed by
21 | Defendant Blak while acting as investigative
22 | employee, and as of date, Defendant Curiel has refused
23 | to process Plaintiff's administrative appeal according to
24 | State law.

25 | (43.) Each inmate 602 appeal mentioned above is
26 | being intentionally with held from processing under the
27 | orders and supervision of Defendant Halls himself
28 | for the sole purpose of concealing the unlawful,

18.

1  UNCONSTITUTIONAL, AND RETALIATORY CRIMINAL MALEFEASANCE
2  IMPOSED UPON PLAINTIFF'S PERSON FOR LEGAL ACTIVITY.
3        Conclusion
4  (44.) BECAUSE DEFENDANT HAWS IS directly involved
5  IN THE MISTREATMENT AND OPPRESSION OF PLAINTIFF WHICH
6  IS AS A direct RESULT OF CONSPIRACY AGAINST RIGHTS,
7  AND BECAUSE THE SUFFERING OF PLAINTIFF IS NOT
8  RELATED TO LEGITIMATE CORRECTIONAL GOALS, PLAINTIFF
9  REQUEST THAT (IN ADDITION TO VIOLATION OF FEDERAL LAWS)
10 DEFENDANT HAWS, AND THOSE ACTING IN CONCERT WITH
11 HIM, BE PROSECUTED FOR VIOLATION OF CALIFORNIA PENAL
12 CODE SECTION 147 [INHUMANITY TO PRISONERS] WHICH
13
14 PROVIDES THAT " EVERY OFFICER WHO IS GUILTY OF
15 WILLFUL INHUMANITY OR OPPRESSION TOWARD ANY PRISONER
16 UNDER HIS CARE OR IN HIS CUSTODY, IS PUNISHABLE BY
17 FINE NOT EXCEEDING FOUR THOUSAND dollars ($4,000) AND
18 BY REMOVAL FROM OFFICE."
19
20    I declare UNDER THE PENALTY OF PERJURY THAT THE
21 ABOVE PARAGRAPHS ONE (1) THROUGH 44 ARE TRUE AND
22 CORRECT, THE SAME AS THE ATTACHED EXHIBITS A-THROUGH
23 L HEREIN UNDER THE LAWS OF THE STATE OF CALIFORNIA AND
24 THE UNITED STATES. EXECUTED ON THIS 28TH day OF
25 NOVEMBER 2007, AT LANCASTER CALIFORNIA.
26
27              JOHN W. WILLIAMS
28              Declarant.

19.

# EXHIBIT   A

State of California                                                                           Youth and Adult Correctional Agency

# Memorandum

Date    :    February 17, 2004

To      :    All California Department of Corrections Employees

Subject:    ZERO TOLERANCE REGARDING THE "CODE OF SILENCE"

The California Department of Corrections (CDC) is only as strong as the values held by each of its employees, sworn and non-sworn. How we conduct ourselves inside our institutions and in the Central Office is a reflection of those values.

The "Code of Silence" operates to conceal wrongdoing. One employee, operating alone, can foster a Code of Silence. The Code of Silence also arises because of a conspiracy among staff to fail to report violations of policy, or to retaliate against those employees who report wrongdoing. Fostering the Code of Silence includes the failure to act when there is an ethical and professional obligation to do so.

Every time a correctional employee decides not to report wrongdoing, he or she harms our Department and each one of us by violating the public's trust. As members of law enforcement, all Correctional Officers must remain beyond reproach. The public's trust in this Department is also violated by retaliating against, ostracizing, or in anyway undermining those employees who report wrongdoing and/or cooperate during investigations. There is no excuse for fostering a Code of Silence.

Your hard fought efforts to protect the public deserve recognition. Recently, however, the public's trust has been undermined by the operation of a Code of Silence within the CDC. To correct this problem we are taking steps to ensure the Department exemplifies integrity and instills pride. Part of this effort is the immediate implementation of a zero tolerance policy concerning the Code of Silence. We will not tolerate any form of silence as it pertains to misconduct, unethical, or illegal behavior. We also will not tolerate any form of reprisal against employees who report misconduct or unethical behavior, including their stigmatization or isolation.

Each employee is responsible for reporting conduct that violates Department policy. Each supervisor and manager is responsible for creating an environment conducive to these goals. Supervisors are responsible for acquiring information and immediately conveying it to managers. Managers are responsible for taking all appropriate steps upon receipt of such information, including initiating investigations and promptly disciplining all employees who violate departmental policy.

Any employee, regardless of rank, sworn or non-sworn, who fails to report violations of policy or who acts in a manner that fosters the Code of Silence, shall be subject to discipline up to and including termination.

RICHARD RIMMER                                    RODERICK Q. HICKMAN
Director (A)                                      Agency Secretary
California Department of Corrections              Youth and Adult Correctional Agency

# Federal Court Continues To Enforce Decade-Old California Prison Guards' "Code-Of-Silence" Ruling

The United States District Court (N.D. Cal.) reviewed progress on its 11-year-old federal court remedial action to eliminate a pernicious code-of-silence by prison guards (most notably at the California Department of Corrections and Rehabilitation's (CDCR) supermax Pelican Bay State Prison). There, investigations of excessive use-of-force complaints against prisoners had been stifled by administration policies grounded in collusion between the Director of Corrections and the prison guards' union (CCPOA). Specifically, the court reviewed an August 22, 2006 report by Special Master John Hagar as to suspected retrenchment after the prior decade of agonizingly reticent progress towards court-ordered compliance, and made further orders.

The court's initial order in this matter, in 1995, found unabashed complicity between top CDCR officials and the CCPOA that literally nurtured the insidious twin events of guard brutality against prisoners and officially-sanctioned cover-up by staff. Culminating in both criminal convictions and court remedial orders, the 1995 smack-down was nonetheless vigorously resisted by CDCR staff. Special Master John Hagar, along with the state's lately reinvigorated Inspector General, maintained strong watchdog supervision of the court's orders.

In his most recent report, Hagar complained of perceived regression by the parties, most notably in the sudden resignations of two outspoken anti-code-of-silence Secretaries of Corrections (Rod Hickman and Jeanne Woodford) in a six-week period in early 2006.

After an October 5, 2006 hearing on Hagar's report, the court issued its findings. While adopting the agreement between the CCPOA and CDCR as to new investigative policies upon a prisoner's excess use-of-force complaint [which restrict the accused guard from immediate access to underlying documentation, so as to avoid manipulation before a formal hearing/resolution], the court directed Hagar to continue to monitor this to prevent backsliding. The court accepted the success story attached to the Bureau of Independent Review, an adjunct to the Inspector General's office that monitors each such complaint in real-time as it moves through the resolution process, to prevent cheating. Hagar shall further meet with the parties every 45 days to closely monitor the process, and report quarterly to the court. The court made it very clear that it would not tolerate any regression to code-of-silence ways.

Importantly for Hagar, who suspected disingenuous pressure on Hickman and Woodford, the court ordered a hearing in December 2006 to take testimony from both to determine what caused their resignations. Hagar's next report and recommendation to the court is due January 31, 2008. See: *Madrid v. Tilton* [formerly *Gomez*], C90-3094 TEH, Order, November 16, 2006.

# EXHIBIT  B

1    DECLARATION OF TIMMY McHAUL

2        I, Timmy McHaul do hereby declare:

3    1.   I am an inmate of the California Department of

4    Corrections & Rehabilitation currently incarcerated at the

5    California State Prison Lancaster, in Lancaster,California

6    under registery number #J-01733, and if called as a witness

7    to testift to the following facts which are within my personal

8    knowledge I could and would competently testify thereto.

9    2.   I am famiular with John W.Williams#V-34099, from the

10   EOP· mental health program and services on D-facility at said

11   prison, and on or about April 19,2007, during Therapeutic

12   Community meeting being held by Senior Psychologist

13   McGuinness, I witnessed J.W.Williams#V-34099(Williams) address

14   a concern to McGuinness regarding inmate paitents being

15   maliciously. beatten by various Correctional Officers, and

16   McGuinness advised Williams to speak with her after the

17   Therapeutic Community meeting had been concluded.

18   3.   Afterwhich, Williams spoke with McGuinness related to

19   staff assult of EOP inmate paitents and the cover up in order

20   to sustain such, and I then overheard McGuinness state to

21   Williams "I would advise you to leave this issue alone if you

22   want to remain in this program."

23       I declare under the penalty of perjury under the laws

24   of the State of California and the United States that the

25   following is true and correct and was Executed on this 4th

26   day of May 2007, at Lancaster,California.

27                                  TIMMY McHAUL:J-01733
                                    DECLARANT:

28

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:  AUG 2 7 2007

In re:  Williams, V-34099
California State Prison, Los Angeles County
44750 - 60th Street West
Lancaster, CA 93536-7620

IAB Case No.: 0615971        Local Log No.: LAC 07-01061

This matter was reviewed on behalf of the Director of the California Department of Corrections and
Rehabilitation (CDCR) by Appeals Examiner S. Wright, Facility Captain. All submitted documentation and
supporting arguments of the parties have been considered.

I   **APPELLANT'S ARGUMENT:**  It is the appellant's position that Dr. McGuinness is ignoring the
mistreatment of Enhanced Outpatient Program (EOP) inmates. The appellant requests that Dr. McGuinness
be prohibited from obstructing, ignoring, and denying mistreatment of EOP inmates. The appellant also
requests that the Chief Psychologist be prohibited from ignoring Dr. MGuinness abandonment of EOP
patients. In addition, the appellant requests that the Coleman monitors be advised of the issues raised in this
appeal.

II  **SECOND LEVEL'S DECISION:**  The reviewer found the appellant was interviewed on May 10, 2007, by
Dr.Kottraba. A review of the allegations of staff misconduct presented in the written complaint has been
completed. Based upon this review, the appellant's appeal has been processed as a Staff Complaint Appeal
Inquiry. The following witnesses were questioned as a result of the appellant's allegations of staff
misconduct: None. The following information was reviewed as a result of the appellant's allegation of staff
misconduct: The appellant's appeal and all attachments. The appellant's appeal was partially granted at the
Second Level of Review (SLR).

III **DIRECTOR'S LEVEL DECISION:**  Appeal is denied.

**A. FINDINGS:**  Upon review of the documentation submitted, it is determined that the appellant's
allegations have been reviewed and evaluated by the administrative staff and an appeal inquiry has been
completed at the SLR.

In event that staff misconduct was substantiated, the institution would take the appropriate course of
action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff,
the general public or the inmate population, and would not be released to the appellant. However, upon
completion of final review, or culmination of an appeal inquiry, the appellant is to be notified by the
respective staff that an inquiry has been completed. On July 16, 2007, the examiner reviewed the related
confidential appeal inquiry report and verified that developed information supports the reviewer's
conclusion. Although the appellant has the right to submit an appeal as a staff complaint, the request for
administrative action regarding staff or the placement of documentation in a staff member's personnel file
is beyond the scope of the appeals process.

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 832.5, 832.7, 832.8
California Code of Regulations, Title 15, Section: 3001, 3004, 3005, 3084.1, 3380, 3391
Administrative Bulletin 05/03: PROCESSING OF ADULT INMATE/PAROLEE APPEALS,
CDC FORM 602, WHICH ALLEGE STAFF MISCONDUCT

**C. ORDER:**  No changes or modifications are required by the institution.

·WILLIAMS, V-34099
CASE NO. 0615971
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, LAC
       Appeals Coordinator, LAC

PURSUANT TO PENAL CODE B B325

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

1. _____

2. _____

Log No.
1. 07-01061
2. _____

Category _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| John Williams | V.31699 | | D.133 |

A. Describe Problem: DO April 15, 2007, during EDP Therapeutic Community Meeting, I spoke with Senior Psychologist McGuinness regarding a disruption of the EDP mental health program imposed by Greenwall Prison guard gang (officers) in disguise as correctional officers who are terrorizing the program with constant and repeated malicious use of deadly force. Senior Psychologist Mr. Guinness completely assaulted, ignored, and ...

If you need more space, attach one additional sheet. (SEE ATTACHMENT)

B. Action Requested: That McGuinness be admonished from disrupting, ignoring and denying the mistreatment of EDP inmates, let the chief psychologist be admonished from condoning, ignoring McGuinness abandonment of EDP patients based on ...

Inmate/Parolee Signature: _____ Date Submitted 4-24-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____ Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____ Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved:                                                          Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to institution or Parole Region Appeals Coordinator within 15 days of
receipt of response.

Signature: _____ Date Submitted: _____

Second Level    ☐ Granted    ☑ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _4-2?-07____ Due Date: _6-8-07_
☑ See Attached Letter

Signature: _C. Pettaba Eng_ Date Completed: _5/10/07_

Warden/Superintendent Signature: _____ Date Returned to Inmate: MAY 2 9 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of
response.

DESPITE THE FACT THAT THIS APPEAL HAS BEEN PARTIALLY GRANTED
NOTHING HAS BEEN DONE TO ADDRESS OR CORRECT THE ABUSE INVOLVED
AND DA MCGUGGINESS HAS NOT COME FORWARD TO ADDRESS THE
PERSONAL KNOWLEDGE CONCERNING THE ISSUES RAISED BY THIS APPEAL
AND THE OFFICIAL INVOLVED HAVE BEEN PROTECTED BY THE CODE
OF SILENCE.

Signature: _____ Date Submitted: _5-30-07_

For the Director's Review, submit all documents to: Director of Corrections
                                                    P.O. Box 942883
                                                    Sacramento, CA 94283-0001
                                                    Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other _____
☑ See Attached Letter                                                AUG 2 ? 2007
                                                                     Date: _____
CDC 602 (12/87)

described the wanton mistreatment of her patients and all issues related to such with a weakness and uncaring disregard for our welfare under the 8th amendment to the U.S. Constitution. I went on to explain to senior psychologist McGuinness that as long as she is in charge over the EOP programs and facilities she has an obligation to the welfare of her patients, and by ignoring the criminal disregard to the mental health population she is also ignoring the duties and obligations of a doctor and senior psychologist, in addition to such as mandated under business and profession code(s). McGuinness reacted to my concerns with distaste, advising that I should ignore her failures towards her duties and obligations to the EOP community if I wanted to remain in the mental health program. I then advised McGuinness that I would inform the Coleman monitors of her passive, reckless and uncaring attitudes towards her patients and McGuinness stated " I don't care the Coleman monitors are coming to tomorrow so tell them then."

The fact that McGuinness was irrational and her social indifference to the issues raised by this appeal constitutes deliberate indifference as the failure to act where there is a professional, lawful, and ethical obligation to do so further constitutes a weakness disregard for my rights under the laws of the state of California and the United States, including all others as outlined by senior psychologist McGuinness to be ignored and founded within the mental health program.

ACTION REQUESTED CONTINUED:

DELIBERATE INDIFFERENCE, THAT THE COLEMAN MONITORS [illegible] ASSISTED BY CSP LANCASTER MENTAL HEALTH IN [illegible] OF THE ISSUES CONTAINED IN THIS APPEAL, AND THAT IT [illegible] AS [illegible] OF NEGLIGENCE AND/OR PRISON [illegible] THIS APPEAL A [illegible] CHARGE IN THE INTEREST OF JUSTICE [illegible]

State of California

Attachment E    2/21/06
Department of Corrections and Rehabilitation

# Memorandum

Date  :  5/10/07

To  :  Inmate Williams V 34099

Subject:  **STAFF COMPLAINT RESPONSE - APPEAL # LAC D-07-01061**

**APPEAL ISSUE:**  In your appeal dated 4/24/07, you requested that Dr. McGuinness be prohibited from obstructing, ignoring, and denying mistreatment of EOP inmates. You also requested that the Chief Psychologist be prohibited from ignoring Dr. McGuinness' abandonment of EOP patients. Finally, you requested that the Coleman monitors be advised of the issues raised in this appeal.

**DETERMINATION OF ISSUE:**  A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review, your appeal has been handled as follows:

☒  PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐  REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be notified of the conclusion of any internal affairs investigation)

**SUMMARY FOR APPEAL INQUIRY:**
You were interviewed on 5/10/07 by Dr. Kottraba, Chief Psychologist (A). During the interview, you reiterated your concern about Dr. McGuinness ignoring the mistreatment of EOP inmates. You did not provide any additional supporting documentation during the interview on 5/10/07, and no witnesses were questioned on the appeal issues, as there were none provided. The following information was reviewed as a result of your allegations of staff misconduct: This appeal with attachments and the California Code of Regulations (CCR), Title 15.

**FINDINGS FOR AN APPEAL INQUIRY:**
Your appeal is PARTIALLY GRANTED at the ☐ First level ☒ Second level, as an inquiry into your allegation has been conducted.    ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review.    Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

_C. Kottraba, Ph.D_
Chief Psychologist (A)

_5/10/07_
Date

_Health Care Manager (A)_

_5/23/07_
Date

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

CDC 1858 (2/97)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.** [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disiplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED |
| --- | --- | --- |
| John W. Williams | *(signature)* | April 24, 07 |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| John W. Williams | *(signature)* | V34599 | 4.24.07 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |

DISTRIBUTION:
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

# EXHIBIT   C



**U.S. Department of Justice**

Federal Bureau of Investigation

*Los Angeles Field Office*

*Ventura Resident Agency*

In Reply, please refer to
File No.

2075 South Victoria Avenue, Suite 200
Ventura, California 93003

July 10, 2007

John Wesley Williams - #F34099
California State Prison Lancaster
P.O. Box 4670
Lancaster, CA 93539

Dear Mr. Williams:

       This letter acknowledges receipt of your hand-written civil rights complaint and accompanying declaration of Timmy McHaul. As you know, it is the responsibility of the FBI and United States Department of Justice to conduct investigations of alleged civil rights violations perpetrated by law enforcement officers, to include correctional officers.

       Your allegations/complaint will be reviewed and, if deemed appropriate and necessary, you may be contacted for further information.

       If you wish to forward any additional documents in support of your allegations, please send them to:

          FBI
          P.O. Box 3819
          Ventura, CA 93006

                Sincerely,

                J. Stephen Tidwell
                Assistant Director in Charge

                By:
                Connie E. Smith
                Supervisory Senior Resident Agent

# EXHIBIT  D

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
**CALIFORNIA STATE PRISON-LOS ANGELES COUNTY**
**44750 60ᵀᴴ Street West**
**Lancaster, CA 93536**



July 6, 2007

Flora Lee
1762 Exposition Blvd
Los Angeles, CA. 90018

Dear Ms. Lee:

This is in response to your letter dated June 28, 2007, regarding Inmate John
Williams, V-34099. In your letter you allege misconduct by staff assigned CSP-
Los Angeles County and that your claims are not being properly investigated.

The California Department of Corrections and Rehabilitation provides recourse
for inmates when they feel that they are being treated unfairly or unjustly, which
is the Inmate Appeal process. You may not file an appeal for Inmate Williams he
must pursue his own issues.

Ms. Lee, after careful review of your letter it has been determined that your son's
appeals have been appropriately screened and categorized by the Inmate
Appeals Coordinator. A review of the Inmate Appeals Tracking System has
revealed that he has filed approximately twelve (12) appeals in 2007, which have
been assigned log numbers. These appeals have either been responded to or
are in the process. Inmate Williams is encouraged to address the Inmate
Appeals Office directly. The Department does not condone any retaliatory
actions toward an inmate for utilizing the appeals system.

If you have any other concerns or questions, please have Inmate Williams
contact the Inmate Appeals Coordinator in writing via institutional mail.

Sincerely,

**J. CURIEL**
**Appeals Coordinator**
**CSP-Los Angeles County**

# EXHIBIT  E



**The Legal Aid Society**
E M P L O Y M E N T   L A W   C E N T E R

*Advocating for workers,*
*their families and communities*

Joan Messing Graff
*President*

William C. McNeill III
*Managing Attorney*

Patricia A. Shiu
*Vice President, Programs*

Senior Staff Attorneys
Claudia Center
Michael T. Gaitley
Christopher Ho

Lewis Bossing
*Staff Attorney*

Matthew Goldberg
*Staff Attorney*

Shelley A. Gregory
*Staff Attorney*

Professor Joseph R. Grodin
*Special Counsel*

Denise M. Hulett
*Staff Attorney*

Elizabeth Kristen
*Staff Attorney*

Kim Kruckel
*Paid Leave Outreach Coordinator*

Anya Lakner
*Project Attorney*

Willie N. Nguyen
*Staff Attorney*

Ruth Silver Taube
*Special Counsel*

Sharon Terman
*Skadden Fellow*

Ann Blankenship
*Paralegal*

Laurel Kapros
*Litigation Assistant*

Pamela Mitchell
*Litigation Assistant*

Marc Broughton
*Paralegal*

August 2, 2007                      **LEGAL MAIL**
                                    **ATTORNEY-CLIENT PRIVILEGE**

John Wesley Williams
CDCR No. V-34099
California State Prison, Los Angeles County
P.O. Box 4670
Lancaster, California  93539

RE:    *Hecker v. California Department of Corrections and Rehabilitation*, et al.,
       Case No. 2:05-cv-02441-LKK-JJM

Dear Mr. Williams:

I am writing in response to your letters dated July 17, July 19, July 24, and July
26, 2007.  We have made copies of the original appeal documents you
included with your July 26 letter and are returning the original documents to
you.

In your July 24 letter you asked us to continue investigating retaliation that
you have suffered at Lancaster.  As I stated in my last letter, we are concerned
that you may be transferred from the EOP to the CCCMS level of care in
retaliation for your work on the *Hecker* case, as well as your other advocacy
work.  We have requested your most recent mental health care records and
any other records relating to the July 3 IDTT committee meeting.  When we
receive these records, we will review them to try to determine the basis for the
committee's decision to reassign you to CCCMS, and then decide how to
proceed with any investigation into the retaliation you have experienced.  I will
write more about this as soon as I know more.

In the meantime, it would be helpful for us if you listed all of the instances of
retaliation that you believe are related to your work on the *Hecker* case.  We
have reviewed your correspondence with us and with Rosen, Bien & Galvan,
and here is the list we have so far:

- In your June 7, 2007 letter, you said that prison officials were taking
  your 602s out of your mail, and also tearing up your personal
  correspondence.  You said that "you [lawyers] let us all suffer trying to

*Letter to John Wesley Williams*
*August 2, 2007*
*Page 2*

> exhaust appeals related to *Hecker* and *Coleman* and when we report mistreatment
> to the *Coleman* monitors we suffer more."

- In your May 22, 2007 letter, you told us that the C/O who vowed to lose your
  legal property knew about your "being apart [*sic*] of the *Hecker* case."

- In your April 27, 2007 letter, you mentioned the same officer's "inappropriate
  comments [about] being part of the *Hecker* case."

Are there any other instances that you can think of when you felt that you were being
retaliated against because of your participation in the *Hecker* case? If you could let me know
about any other instances of such retaliation, I would appreciate it.

Also, in your July 24 letter you mention that you received Ken Walczak's letter about your
*Hecker* declaration. Today I received word that you have signed and returned the declaration
to Rosen, Bien & Galvan. Thank you for doing this. We think that it is important to let
Judge Karlton and Judge Moulds, who are the judges for the *Hecker* case, know about the
retaliation that you have suffered because of your work on the case. I should also tell you
that Ken and the other attorneys at Rosen, Bien & Galvan have taken the lead in
investigating the retaliation you have suffered at Lancaster. They are very interested in
protecting you from any reprisals for your legal advocacy, including your work on *Hecker*.

Your July 24 letter also asks whether I have received the civil rights complaint you filed with
the United States Department of Justice, and the 1824 appeal that was screened out by the
appeals coordinators at Lancaster. These documents were enclosed with your July 19 and
July 26 letters, and I have received them. I am a little confused about what happened with
the 1824 appeal about access to work in the law library. In your letter to the appeals
coordinators you complain that this appeal has been improperly screened out. If this is the
case, I agree with you; I believe that you should be permitted to exhaust this appeal to the
Director's Level. I can only suggest that you may wish to file a 602 appeal about the
improper handling of your 1824 appeal. If you do, be sure to explain why the prison's
refusing to let you work in the law library is harming you.

You also mention, however, that Sergeant Esquivias forced you to withdraw this appeal. Is
this true? How did Sergeant Esquivias do this? Or did he only try to force you to withdraw,
but you didn't do it? Please let us know more about this; additionally, if Sergeant Esquivias
interfered with your use of the appeals process, you may wish to consider filing a 602 or
Citizen's Complaint to complain about what happened.

Finally, in your July 17 letter you asked me to forward the enclosed letter to Dr. Kottraba
and to Jane Kahn. I have done so. In a separate mailing I also received a letter from you to
Senior Psychologist McGuinness. You did not include any instruction about this letter, so I
did not know if you wanted me to forward it to Dr. McGuinness, or if the copy you sent me
was for my files. If you want me to forward the letter to Dr. McGuinness I will do so, but I

*Letter to John Wesley Williams*
*August 2, 2007*
*Page 3*

wonder whether it is a good idea to send her a letter that contains several angry words and sentences, especially at this time when you are facing reassignment to the CCCMS level of care. I usually advise my clients that it is not in their best interest to send letters to decision makers that are too angry. Please let me know what you want me to do about this.

Again, thank you for your work on the *Hecker* case. Please keep me posted as to your mental health care and any mental health discrimination or retaliation that you may be experiencing. Please also keep me posted about the status of your federal court complaint against the Los Angeles County Sheriff's Department.

Very truly yours,

Lewis Bossing

Enclosures

1      I, JOHN WESLEY WILLIAMS, declare that:

2      1.    I have personal knowledge of the facts contained within this declaration and
3 verify that the matters alleged herein are true and correct, except as to those matters alleged on
4 information and belief, and, as to those, I believe them to be true. If called as a witness in this
5 case, I could and would testify competently to those facts.

6      2.    I am an inmate incarcerated at the California State Prison – Los Angeles County
7 ("LAC") in Lancaster, California, under inmate number V-34099. I was received into the
8 California Department of Corrections and Rehabilitation ("CDCR") on or about April 30, 2004
9 at North Kern State Prison's Reception Center for level IV placement. I was transferred to
10 California State Prison – Sacramento ("SAC") on or about December 7, 2004.  I was
11 transferred from SAC to LAC on or about March 23, 2007.  During past terms of incarceration
12 I have been assigned to other CDCR facilities, including the California Men's Colony
13 ("CMC").  During my present incarceration, I have been told that I might be transferred to
14 other CDCR facilities, including Pelican Bay State Prison.

15      3.    On December 16, 2004, I was assigned to the Correctional Clinical Case
16 Management System ("CCCMS") at SAC. I was admitted to the Enhanced Outpatient Program
17 ("EOP") on or about June 6, 2005.  I was returned to CCCMS on or about November 17, 2005.
18 I was admitted to a Mental Health Crisis Bed on or about August 21, 2006.  On or about
19 September 6, 2006, I was reassigned to the EOP.

20 **Psychiatric Disability**

21      4.    I have a psychiatric disability that limits my ability to think, read, write,
22 concentrate, sleep, eat, interact with others, and work certain jobs. My medical file documents
23 the history of my disability. For instance, I have been diagnosed with mental health conditions
24 including paranoid schizophrenia, schizoaffective disorder, dysphoria, antisocial personality
25 disorder, hallucinations, and delusions.  These and other symptoms associated with my
26 disability prevented me from getting beyond the sixth grade.

27      5.    I use psychiatric medicine and other kinds of mental health therapy, such as
28 counseling, to lessen the effects of my impairments. Unfortunately, the treatments to date have

1  not effectively addressed all of my symptoms. Medication helps me to stay relaxed and ease
2  my way of thinking but my day-to-day life is still very much affected.

3  6.   I am informed and believe, and thereupon allege, that the CDCR regards or
4  perceives me as a person with a disability. This perception is documented in my medical and
5  central files, which describe me as having numerous severe psychiatric disabilities.

6  **Discrimination on the Basis of My Disability**

7  7.   The CDCR has deemed me to be ineligible for numerous programs based on my
8  psychiatric status, including community correctional re-entry centers (CCRCs), community
9  correctional facilities (CCFs), modified community correctional facilities (MCCFs), fire camp,
10  minimum support facilities (MSFs), and substance abuse programs (SAPs). To my knowledge,
11  I have never been individually assessed for these programs.

12  8.   Because of my participation in the EOP, I have been excluded from many
13  opportunities offered to general population inmates. LAC does not permit me to participate in
14  most jobs, educational classes, recreational programs, and religious services. CDCR is
15  discriminating against me because of my psychiatric disability by denying me access to these
16  programs.

17  9.   I am perfectly capable of participating in the activities I have applied for. I know
18  that my mental health impairment would not affect my performance, because I have succeeded
19  in similar programs in the past. For instance, during a previous sentence I worked for two years
20  as the lead pot cook in the kitchen at CMC. While at CMC, I also worked in the bakery, on a
21  yard crew, and as a tier tender through the Prison Industry Authority ("PIA"). Prior to entering
22  MHSDS, I was also employed at SAC as a butcher.

23  10.   I have been informed of additional CDCR policies that exclude inmates at the
24  CCCMS and EOP levels of care from various programs, including employment, educational
25  and vocational programs, religious programming, and other activities. I believe that these
26  additional CDCR policies reflect a perception that inmates such as me are substantially limited
27  in numerous major life activities, including interacting with others, learning, and working.

28

1    11.    I have been informed that at reception the CDCR adds 4 points to an inmate's

2    classification score based upon their status as having a "mental illness." I believe that 4 points

3    were added to my classification score when I entered the CDCR system in 2004. I believe that

4    this policy reflects a perception that inmates such as me are substantially limited in major life

5    activities, including interacting with others.

6    **Retaliation for Exercise of My Rights**

7    12.    Shortly after my arrival at LAC in March of 2007, I was harassed by a housing

8    officer as a result of my participation in this case. The officer stated that she knew I was

9    involved with the *Hecker* case, and told me that she would make sure that my personal

10   property, including my legal materials would get "lost in R & R [Receiving & Release]."

11   13.    On three (3) occasions following this incident, I succeeded in getting the EOP

12   Sergeant to instruct housing officers to assist me in obtaining my legal property, only to have

13   their efforts sabotaged by the housing officer who threatened to "lose" my legal materials.

14   14.    Neither my attempts to file inmate appeals, nor my conversations with

15   counselors, case managers, or psychologists have succeeded in remedying this situation. The

16   housing officer has made good on her promise to keep me from accessing my own property, in

17   retaliation for my participation in this case.

18   15.    On April 23, 2007, I filed a complaint with the United States Department of

19   Justice against LAC Senior Psychologist E. McGuinness. McGuinness has advised me to

20   ignore beatings and assaults on EOP prisoners by correctional officers. After I refused to do

21   this, and told her I would speak out against the assaults, she sought to remove me from the

22   EOP program. This would compromise my treatment and my mental health.

23   16.    In addition to the incidents described above, LAC officers have told me that I

24   could not have my legal property because I "like to file lawsuits." They have removed my 602

25   grievance forms from the mail, ensuring that the grievances do not get filed or answered. They

26   have torn, damaged, or confiscated my letters to family, including my mother, and the citizen's

27   complaints other EOP prisoners have sent to their families. These incidents have increased in

28   frequency and severity each time LAC has been visited by *Coleman* monitors.

1    17.    LAC officers have also told me that they intend to throw away all of my papers

2  concerning this case. As a result, I believe that some of the above-mentioned retaliatory

3  actions are directly related to my status as a *Hecker* plaintiff.

4    18.    I have filed staff misconduct reports, and aided other prisoners with their

5  grievances about these assaults, and the code of silence among correctional officers which

6  accompanies them. I believe that the rest of the above-mentioned retaliatory actions occurred

7  as a result of my exercise of the right to speak out against misconduct, and to file grievances

8  and complaints on these issues.

9    19.    This declaration addresses only some of the barriers and problems that I have

10  experienced as an inmate at LAC.

11    I declare under penalty of perjury under the laws of the State of California and the

12  United States that the foregoing is true and correct, as was executed on this 6 day of

13  July  2007, at Lancaster, California.

14

15

16                                    John Wesley Williams
                                      Plaintiff/Declarant
17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT   F

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

September 10, 2007

**WILLIAMS, V34099**
*FDB100000000149L*

Log Number: LAC-D-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

Mr. Curiel

The enclosed documents are being returned to you for the following reasons:

THIS SCREENING FORM IS IN ERROR BECAUSE YOU SCREENED OUT THIS APPEAL WITHOUT PROVIDING A REASON, EXPLANATION, OR CAL CODE OF REGULATION WHICH I HAVE NOT COMPLIED WITH, AND THIS SCREENING FORM IS AN EXAMPLE OF THE ISSUES RAISED IN THE INSTANT APPEAL,

Appeals Coordinator
CSP - Los Angeles County AS YOU DO NOT SCREEN OUT APPEALS FOR REASONS SET FORTH BY C.C.R. TITLE 15 SECTION 3084.3 2) THRU (6), YOU SCREEN OUT APPEALS BECAUSE YOU CAN, AND IN AN EFFORT TO CONCEAL MISCONDUCT AND MALFEASANCE OCCURRING WITHIN THE PRISON, AND THE FAILURE TO SCREEN APPEALS IN COMPLIANCE WITH THE DIRECTIVES WHICH IS A VIOLATION OF YOUR DUTIES, WHICH IS MISCONDUCT, AND NE FACT THAT YOU MAINTAIN A PRACTICE OF FILTERING OUT ALL APPEALS ALLEGING MISCONDUCT IS CRIMINAL MALFEASANCE, IF

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

YOU INSIST UPON FUSTRATING MY APPEAL EFFORTS I WILL ASK MY FAMILY AND FRIENDS TO CITIZEN'S COMPLAINT YOU FOR CONDUCT

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

WHICH FOSTERS THE CODE OF SILENCE! 9/11/07.

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

September 20, 2007

**WILLIAMS, V34099**
FDB100000000149L

Log Number: LAC-D-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

**You have submitted an appeal that duplicates a previous appeal upon which a decision has been rendered or is pending (CCR 3084.3(c)(2)).**

**THIS APPAEL WAS FORWARDING TO THE HIRING AUTHORITY AND IT WAS DETERMINED THAT THIS APPEAL DOES NOT MEET THE REQUIRMENT FOR ASSIGNMENT AS A STAFF COMPLAINT,**

THIS SCREENING FORM IS IN ERROR BECAUSE DESPITE WHAT "CHIEF DEPUTY WARDEN FALLON" DECIDED THE CANNOT lAWFULLY VIOLATE DOM SECTION 54100.B BY PLACING UNREASONABLE RESTRAINTS ON MY RIGHT TO APPEAL A CUSTOM/

Appeals Coordinator habit AND PRACTICE THAT CLEARLY HAS AN
CSP - Los Angeles County ADVERSE EFFECT ON MY WELFARE, THE APPEALS COORDINATORS ARE BEING INSTRUCTED TO SCREEN OUT MY 602 APPEALS FOR REASONS CONTRARY TO STATE lAW, AND THE SAME OFFICIAl WHO IS BEHIND THESE UNlAWFUL ORDERS ARE/O OPERATIONS ARE PREVENTING ME FROM PROCESSING THE INSTANT APPEAL IO NO EFFORT TO CONCEAL HIS OWN MAINTEASANCE,

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

IF THE DO NOT WISH TO PROCESS MY APPEAL THEN I WILL ASK A CITIZEN TO FILE CITIZEN'S COMPlAINT REGARDING THIS ISSUE, EITHER

**PERMANENT APPEAL ATTACHMENT — DO NOT REMOVE**

WAY CHIEF DEPUTY WARDEN FALLON WILL BE PROHIBITED FROM HIS

John W.Williams#V-34099
CSP-Los Angeles,D1-149

To: CC.II. J.Curiel/Appeals Coordinator
    CSP-Los Angeles-Appeals Office

                    September 30,2007

Dear Mr.Curiel,

    I am disturbed by your ongoing pattern of placing
unreasonable restraints on my right to appeal. In addition, you
continue to ignore my request related to the status of my various
inmate appeals, yet you would advise my mother that "I" should
contact the appeals office if I have any questions about my
appeals.

    On one of the occasions in which I spoke with you, you told
me that the state would pay for any judgment in the event you
get sued for your unlawful customs, habits, and practices when
handling and processing inmate appeals, and because you honestly
believe this ridiculousness, you are even more bold with your
protecting staff and friends by filtering out inmate appeals for
reasons contrary to state law.

    In recognizing your criminal thinking, I did some research
and found that in addition to money damages, I can ask the Judge
to order the same state who you think will pay for your corrupt
and dishonest practices to deprive and deny you of your retire-
ment and pention funds as described in the DOM.

    These bogus and unfounded allegations you continue to make
against me, claiming that I am manipulating the appeal system
are not only erroneous, but are also your way of revilling your
own malfeasance.

    I was wrong to ever think that you and I came to a
respectable agreement and understanding because as long as you
are left alone under state law, you will continue to be dishonest
and corrupt, and there is no way that the corrupt can correct
the corrupt.

    Untill I have the pleasure of bring you to justice before
a federal court, I urge you to continue your dishonest corrupt
habits and practices. My family letters and citizen's complaints
are going to make for good discovery, especially when Mr.James
Tilton and Warden Haws will have to explain why you were allowed
to defy the directors rules and regulations.

OCT 4 4 2007

John W.Williams#V-34099
CSP-Los Angeles
PO Box 4670
Lancaster,Calif 93539
September 18,2007
Re: Institutional Appeal

To: Secretary James Tilton          Chief N.Grannis
    California Department of         Chief Inmate Appeals
    Corrections & Rehabilitation:    Director of Corrections
    1515 S.Street                    P.O. Box 942883
    P.O. Box 942883                  Sacramento,Calif 94283
    Sacramento,Calif 94283

Dear Secretary Tilton,

    The attached inmate 602 appeal has been unlawfully screened out and cancelled by your inmate appeals coordinators for reasons contrary to state law.

    I have complied with CCR sections 3084.1 thru 3085, yet I have been deprived of the right to access the administrative inmate 602 appeal processing system by your subordinates who use the color of law to filter out 602 appeals alleging unlawful misconduct by prison officials, and this fustrating of my right to appeal is not only a reprisal, but also conduct which fosters the code of silence.

    Could you please have the Chief Inmate Appeals review the attached 602 appeal, and order prison officials to process my appeal issues, and to make such administrative remedies avaliable to me?

    Sincerely,

Case 3:08-cv-00160-JSW     Document 1     Filed 01/11/2008     Page 50 of 81

, STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION          ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



November 9, 2007

WILLIAMS, JOHNWESLEY, V34099
California State Prison, Los Angeles County
44750 - 60th Street West
Lancaster, CA 93536-7620

RE: IAB# 0710307     STAFF COMPLAINTS

Mr. WILLIAMS:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal was rejected, withdrawn or cancelled. If you disagree with that decision, contact the Appeals Coordinator. You must comply with instructions from that office.

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| | Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|---|
| | | 1. _____ | 1. _____ | | _____ |
| | | 2. _____ | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME John Williams | NUMBER V-34099 | ASSIGNMENT | UNIT/ROOM NUMBER D1-149 |
|---|---|---|---|

**A. Describe Problem:** This appeal is filed pursuant to DOM section 54100.25.1, and Administrative Bulletin 05/03 against Chief Deputy Warden D.Fallon, appeal coordinators CCII S.Aref and J.Curiel for using the prestige or influence of the state and the Department of Corrections for private gain or advantage, which also includes participating in illegal and unlawful activity in violation of CCR Title 15 section 3413(a)(1) & (2). Specifically, each time I have attempted to access the 602 appeal system at CSP-Los Angeles, S.Aref and J.Curiel intentionally thwarts and fustrates my appeal effort by either

If you need more space, attach one additional sheet.                    see attachment

**B. Action Requested:** that WACAEO HALES ESTABLISH a CrEADLE EMPLOYEE disciplinary process which would prohibit C.D. WACAEO fellow FCom pocateing DrGanIzEAD criminal MaltEASAnCE, and Prohibit CCII, ACEF and CUDEL from mishandling my APPEALs, That CCII

**Inmate/Parolee Signature:** _____                    **Date Submitted:** 8·15·07

**C. INFORMAL LEVEL** (Date Received: _____ )

**Staff Response:** _____

_____

_____

_____

**Staff Signature:** _____                    **Date Returned to Inmate:** _____

*(margin stamps: 'AUG 21, SEP 14 2007)*

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

**Signature:** _____                    **Date Submitted:** _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

**CDC Appeal Number:**

SEP 19 2007

D:B-045

screening out my appeals for false and bogus reasons, or canceli-
ng out my appeals for reasons contrary to state law. CCR Title 15
section 3084.1 thru 3085 governs the administrative appeal
process and procedures in all California State prisons, yet Aref
and Curiel have re-written these rules and regulations and are
handling inmate appeal according to guidelines and procedures
consistent with the February 17,2004, Memorandum regarding the
code of silence, as Aref and Curiel are acting on behalf of
CD.Warden Fallon by manipulation of the inmate appeal processing
system in order to prevent myself, and other inmates, from filing
and exhausting 602 appeals against suspected Green Wall prison
guard gang members.

AUG 2 1 2007

        On August 7,2007, I spoke with CCII. Curiel about the
unlawful and defective inmate appeal system at this prison, and
while Curiel's spoken words were in compliance with the rules
and regulations which governs inmate appeals, Curiel's actions
once back in the appeals office were completely contrary, as
Curiel continued to use the color of law to filter out my
inmate appeals against prison officials who are known to committ
misconduct, malfeasance, unlawful, and unconstitutional
activity while under color of law, and C.D. Warden
Fallon instructs these appeals coordinators so has to
foster the code of silence by filtering out my appeals.
I have written to Warden Hows concerning various acts of
malfeasance imposed by his subordinates and C.D. Warden
Adams ( responds on behalf of Warden Hows and encourages
me to address the issue by use of the inmate appeal system
and when I do so, Aref and Curiel forwards my appeal to
C.D. Fallon, and Fallon in return, completely contradicts
his written letters to me by instructing Aref and Curiel to
screen out my 602 appeals for reasons contrary to state
law, and this is a systematic practice being enforced and
maintained from the Wardens office where C.D. Fallon base
his criminal operations which includes gang activity because
C.D. Warden Fallon is instructing his subordinates to foster
the code of silence by filtering and screening out my
602 appeals for the sole purpose of the green wall prison
guard gang.
    Action Requested Continue:
Aref and Curiel be removed from the appeals office and
I be allowed to exhaust this appeal of all states remedies.

SEP 14 2007

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

CDC 1858 (2/97)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement.**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.** [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disiplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

| COMPLAINANT'S PRINTED NAME<br>John Williams | COMPLAINANT'S SIGNATURE | DATE SIGNED<br>August 15,2007 | |
|---|---|---|---|
| INMATE/PAROLEE PRINTED NAME<br>John Williams | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER<br>V-34099 | DATE SIGNED<br>8.15.07 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |

DISTRIBUTION:
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

# EXHIBIT  G

S. Morrissette
1313 Pina Ave
Palmdale, Ca 22520
(602  555-5534

To: Name of Corporation and Member being Contacted
    Address and Phone Number

Re: Possible Food Poisoning at your(city restaurant) Chain:

September 19,2007

Dear

My name is S.Morrissette and on (date) I was a customer in
your Palmdale establishment where I ordered the (name of food
which got you sick) which (number) hours later caused me to
suffer diarrhea, nausea, vomiting, headache, and dizziness.

In addition to being immediately treated at (name) hospital
by Dr.(name) and diagnosised with food poisoning, I also suffered
a three day loss of work which was needed in order to recover
from this horrendous ordeal.

It is important you understand that I do not wish to
litigate in attempts to obtain relief beyond what I am rightfully
and morally entitled. I am only requesting that you take full
responsibility for my pain and suffering by making me "whole"
as prescribed by law. Meaning, I ask that you compensate my
sales purchase, medical expenses, and lost wages.

I also have a concern for others who have, or may suffer
as I have, so I will also ask that you ensure the safety of your
current and future customers by doing whatever is necessary to
address and correct the service which resulted in my injury.

I will be happy to provide you with any documentation
relevant to the issues raised by this notice in the event that
such production would facilitate in resolving this issue.

Please feel free to contact me at the above address and
phone number within a reasonable time, and between the hours of
( time line).

Sincerely,

# Folsom beatings revealed

## Sergeant fired, 12 guards disciplined

By [illegible]
[illegible] Bureau

[illegible] Folsom Prison sergeant has been fired and 12 other correctional [illegible] disciplined in connection with the beatings of four inmates [illegible] attempts to cover up the incident.

[illegible] spokeswoman Lt. [illegible] said Monday that the [illegible] forwarded to the [illegible] County district attorney [illegible] prosecution for felony [illegible] charges.

[illegible] could not discuss [illegible] of the situation because [illegible] personnel matters [illegible] confirm the identities [illegible] of them [illegible] department's investigation [illegible] reached for comment Monday.

According to the investigative file [illegible] The Bee, the beatings took place Aug. 14, allegedly [illegible] for an assault on a correctional officer by several inmates [illegible] the day.

[illegible] the four prisoners [illegible] holding [illegible] by at least four correctional officers while a dozen or more other officers stood nearby [illegible] according to the documents.

[illegible] "told me that he [illegible]" one of the [illegible] in a deposition. "[illegible] blood drawn [illegible] They brought 'em in to [illegible] down."

[illegible] the beatings apparently [illegible] attention of higher prison officials [illegible] and a special [illegible] is ordered. Disciplinary [illegible] initiated in May [illegible] was fired [illegible] involvement.

[illegible] will be no more [illegible] Other possible disciplinary actions could include [illegible] reductions in pay, [illegible] without pay and letters [illegible].

[illegible] court testimony [illegible] Folsom officials are [illegible] number of apparently [illegible] incidents of alleged [illegible] It was not clear [illegible] came to light [illegible].

[illegible] investigative

## Folsom

Continued from page A1

file, called an "incident report," reveal that the events leading to the beatings began about 12:30 p.m. on Aug. 14 in the main kitchen of a unit in the new prison section.

According to the documents:

Anthony Tarkington, a kidnapper and robber from Los Angeles, began to verbally abuse an officer named Donald Abney. Abney ordered him to be quiet and began to escort him out of the kitchen when Tarkington suddenly turned and began throwing punches. Three other inmates broke through a screen door and joined the assault. Several others cheered them on from a bakery area.

Other officers came to Abney's aid, but not before he was kicked several times and suffered facial cuts and chipped teeth.

While inmates were being treated for minor cuts, some became abusive again and Tarkington slugged another officer.

Several hours later, according to statements from participants, Trillo formed a "hit squad" made up of Officers Andrew Schwab, Patrick [illegible] and Steve Tyler.

Those singled out for beatings were Richard Anderson, Dwayne Gray, Edward Fields and [illegible] Berry, all of Los Angeles. Berry hadn't been part of the assault on Abney, but had yelled support from inside the bakery. The other three had joined Tarkington in the attack on Abney.

With the concurrence of Lt. Andy Lopez, who allegedly made the "thirst for blood" remark, the four prisoners were beaten for several minutes each. The report indicates they were hit, kicked, heads were slammed against walls and they were picked up and thrown to the floor.

"I just jumped on 'em," Schwab told investigators. "Like I say, there was 25 people there or more even, I don't know. There was green (officers wear green) everywhere and they'd bring a guy in and everybody'd just start jumping on him."

Both Trillo and Lopez denied giving such a [illegible] or having any knowledge of beatings. But the officers who administered the beating and others who watched said otherwise.

Trillo then allegedly told the officers not to write any reports. If questioned, they were to say they were in the cafeteria [illegible] for inmates at the time.

The report also indicated that another lieutenant, an associate warden and the prison administrator of the day all may have had knowledge of the beatings, but the evidence was [illegible] conclusive.

The inmates were eventually treated for their injuries and returned to custody.

Lady Cool,

I always enjoy your company because you are down to earth and compassionate, but mostly I am drawn to your intellect, and I feel as if I could talk with you for a lifetime and still remain inquisitive. The only complaint I have is the limitations of our visit.

I neglected to advise that you need write and send the letter I authored ASAP while ensuring that you keep a clear record of mailing and receiving by the company. While this is in the process, I urge you to go to the Superior Court and obtain a "Small Claims" packet. I have requested such packet so that I can complete it for your instructions on how to properly fill out and file.

I have delt with different people from all walks of life, and based on such experience I know you to be trustworthy and honest. Currently I am serving a life sentence however, my case is still pending appeal, but for now the reality is that I'm a lifer. I have made and spent more money while in prison than I've done while free, and my dream/goal is to become a tycoon because through wealth I've been able to rehabilitate myself by helping others.

I'de like you to consider taking a class and/or course on how to buy foreclosure property and real estate because you have natural entrepreneurial skills should you focus and invest time into such. I've analysed your character, and payed attention to all you have said, and I'm confidant that you wouldn't shit on me, and I hope you know that I wouldn't you.

You remind me of someone who would risk approaching a cage holding a wild beast, relying soaly on your belief that the beast will not harm you because your intention is not to harm

it.
You may ask yourself "why" over and over, and in response
I say that I did not seek you out with the intent in Iwilling
anything which I have already. I am a BIG believer in chemistry,
and you have to admit that this is something which we have if
nothing else. Others can see it, which is why I often avoid
calling you collect or speaking with you outside of professional
communications while in the presence of others.

I've heard talk and gossip from your family members that
you have an alternative lifestyle, and even if this is true than
it must be benefital because it has only enhanced the beauty in-
side you, and while you are plump you are not ugly. Personally I
find that your attire is a disguise, one which I look beyond.

If I am out of line for anything I've said then please
forgive me and trust that I will not send you mail anymore to
this address. All I ask is that you continue to allow me to be
heard outside of family, friends, colleagues, and those who are
here to ruine and compromise.

I would NEVER ask or expect you to break the law, and with
your skeptical nature when it comes to ME, I need clarify this
off the top. By mailing you this alone I am taking a risk more
bigger than I could ever ask of you, and I only hope that you
dont shit on me.

Ponder on this letter and find a way to express response
to such without exposing my concerns. I really think that you
and I could make a super team, and with your approvisl I'de like
to elaborate more on the issues raised by this notice. For now
please be well, and dont shit on me Please.

P.S. The enclosed civil complaint matter has been decided by
the Court, and the only question now is will my settlement
demand be accepted or will the Court have to set a trial
date. As you see, the attorney for the defendants' are
open to settle, and this will be discussed during the
November 5,2007, conference call. Please keep this
information confidential and do not involve your family.

I'de like to arrange some investiments if you are
concerned enough to assist. Please consider.

# EXHIBIT  H

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

**Date:**    October 23, 2007

**To:**    CCI CRUZ

*Anthony, please let me know. of the ext is good. Thx! — Diana*

*134*

**Subject:  COURT TELEPHONE CALL**

--

Please arrange to have inmate John Wesley Williams, V-34099, D1-149L, available for a
conference call from the court on Monday, November 5, 2007.  The Honorable Judge will
be initiating the call at 1530 hours to extension 6461.

Your cooperation is appreciated.

If you have any questions, feel free to call me at extension 5569.

Diana Chanee
Litigation Office

*Capt Parker: what happened in Re Williams LCSP Moussette completed RVR for Overfamiliarity and stated she feels threatened by his continued presence. She goes in and out of both Bldgs H-2 and Williams goes in + out of Program Office for group therpies. Please resolve.*

ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

DISTRIBUTION:
WHITE - CENTRAL FILE
BLUE - INMATE (2ND COPY)
GREEN - ASU

CANARY - WARDEN
PINK - HEALTH CARE MGR
GOLDENROD - INMATE (1ST COPY)

| INMATE'S NAME | CDC NUMBER |
|---|---|
|  |  |

## REASON(S) FOR PLACEMENT (PART A)

☐ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

☐ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

☐ ENDANGERS INSTITUTION SECURITY       ☐ UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:

☐ CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) ☐      IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE:      /      /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | | SIGNATURE | | | TITLE |
|---|---|---|---|---|---|---|
| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | | | STAFF'S TITLE |
| ☐ INMATE REFUSED TO SIGN | | INMATE SIGNATURE | | | CDC NUMBER | |

## ADMINISTRATIVE REVIEW (PART B)

*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|---|
| STAFF ASSISTANT NAME | TITLE | | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |

### IS THIS INMATE:

| | | |
|---|---|---|
| LITERATE? | ☐ YES | ☐NO EVIDENCE COLLECTION BY IE UNNECESSARY      ☐ YES   ☐ NO |
| FLUENT IN ENGLISH? | ☐ YES | ☐NO DECLINED ANY INVESTIGATIVE EMPLOYEE      ☐ YES   ☐ NO |
| ABLE TO COMPREHEND ISSUES? | ☐ YES | ☐NO ASU PLACEMENT IS FOR DISCIPLINARY REASONS      ☐ YES   ☐ NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | ☐ YES | ☐NO DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED      ☐ YES |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | ☐ YES | |

Any "NO" requires SA assignment                                  Any "NO" may require IE assignment

☐ NOT ASSIGNED                              ☐ NOT ASSIGNED

## INMATE WAIVERS

☐ INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER     ☐ INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| ☐ NO WITNESSES REQUESTED BY INMATE | INMATE SIGNATURE | DATE |
|---|---|---|

## WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |

**DECISION:** ☐ RELEASE TO UNIT/FACILITY_____     ☐ RETAIN PENDING ICC REVIEW   ☐ DOUBLE CELL   ☐ SINGLE CELL PENDING ICC

REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE | |
|---|---|---|---|---|---|---|
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | | DATE OF REVIEW |

See chronological Classification Review document (CDC 128 - G) for specific hearing information

# EXHIBIT I



STATE OF CALIFORNIA
CDC 115-MH (12/03)

C.C.

J/M Copy    CLEA    DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT: MENTAL HEALTH ASSESSMENT REQUEST

## REVIEWING CUSTODY SUPERVISOR

A CDC 115, Rules Violation Report (RVR), has been written on the following inmate, who requires a mental health assessment.

Inmate Name: _____WILLIAMS_____    CDC Number: ___V-34099___

RVR Log Number: _D07-10-0024___    Date of Violation: _10/19/07___    Housing: _FD-B1-149L_

Specific Act Charged: ___3013 UNLAWFUL INFLUENCE___

The inmate's current Mental Health Level of Care is: (check one)

☐ NOT IN MHSDS PROGRAM*    ☐ CCCMS*    ☒ EOP    ☐ MHCB    ☐ DMH

**\*CCCMS AND NON-MHSDS PROGRAM PARTICIPANTS WILL BE REFERRED FOR A MENTAL HEALTH ASSESSMENT FOR "BIZARRE, UNUSUAL OR UNCHARACTERISTIC" BEHAVIOR.**

Sent to Mental Health: _10-29-07_ By: _C/O_ _BOAK_ (signature) _Boak_
    Date        Print Name        Signature

Return this form to: _D yd_    _BOAK_    *By: _11-6-07_
            Print Name        Date

\*(CCCMS and non-MHSDS, 5 working days; EOP/MHCB/DMH, 15 calendar days)

## MENTAL HEALTH CLINICIAN

Conducted **non-confidential** interview: __11/6/07__ (Inmate informed of non-confidentiality).
                Date

1. CCCMS/NON-MHSDS only. Are there any mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his/her interests in the hearing that would indicate the need for the assignment of a Staff Assistant?    ☑ Yes    ☐ No
   Explain "yes" response: _EOP_ _____

2. In your opinion, did the inmate's mental disorder appear to contribute to the behavior that led to the RVR?
   ☐ Yes    ☑ No    Explain "yes" response: _I/M stated he was always ill and understand complaint. I/M stated "I wrote it for my attorne it was not for staff'_

3. If the inmate is found guilty of the offense, are there any mental health factors that the hearing officer should consider in assessing the penalty?    ☑ Yes    ☐ No    Explain "yes" response: _I/m should continue to receive yard privileges to maintain mental stability._

| INSTITUTION: CSP-LAC | CLINICIAN NAME (Print) Wadlington, Phd | SIGNATURE | DATE |
|---|---|---|---|
| RECEIVED BY : | CUSTODY STAFF NAME (Print) | SIGNATURE | DATE |

DISTRIBUTION:
Original · Central File With Adjudicated CDC 115
Blue      : Unit Health Record
Pink      · Inmate

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

## RULES VIOLATION REPORT:
## MENTAL HEALTH ASSESSMENT REQUEST

CDC 115-MH (12/03)
STATE OF CALIFORNIA

[ ] C.C.C.M.S.    [X] E.O.P.    [ ] CLEAR

STATE OF CALIFORNIA    804 TO RECORDS: _____    DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| V-34099 | WILLIAMS | | CSP-LAC | FD-B1-149L | 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 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | | LOCATION | DATE | TIME |
|---|---|---|---|---|---|
| 3013 | UNLAWFUL INFLUENCE | | FD-EDUCATION | 10/19/07 | 1700 Hours |

**CIRCUMSTANCES**

On Friday, October 19, 2007, at approximately 1700 Hours while performing my duties as Licensed Clinical Social Worker (LCSW), assigned to the Enhanced Outpatient Program (EOP), I discovered a personal letter intended for me secreted in a packet of paperwork. The packet of paperwork containing the letter had been personally handed to me by Inmate WILLIAMS, V-34099, FD-B1-149L, approximately one week earlier. When WILLIAMS first gave me the packet of written material, he stated that it contained information related to court cases. In the actual letter, WILLIAMS stated that he expected a large financial settlement soon, and asked me if I could reinvest said money in real estate for him. Also in the letter, WILLIAMS wrote that with regard to my own recent incident of exposure to food poisoning, which caused me to miss several days of work, he had included with his letter, paperwork to assist me in filing a civil complaint against the restaurant. Due to the fact that he had given me the paperwork at the end of a group therapy class, I placed that paperwork along with other paperwork in my office bookcase. I did not review the material until Friday, October 19, 2007, at which time I found the subject letter secreted in the packet of written material WILLIAMS had handed me. I read for the first time that he had addressed the packet to "Lady Cool."

(Circumstances continued on CDC-115-C)

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ S. Morribsette, Licensed Clinical Social Worker | | ___ | FD-EOP LCSW | S/S |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | □ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ▶ H. Huerta, Correctional Sergeant | | DATE _____ | LOC. ___ |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO | | | |
|---|---|---|---|---|---|---|---|
| □ ADMINISTRATIVE | | | ▶ L. Parker, Facility-D Captain. | □ HO | □ SHO | □ SC | □ FC |
| ☒ SERIOUS | | | | | | | |

### COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| □ INCIDENT REPORT LOG NUMBER: ___ | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

**HEARING**

REFERRED TO  □ CLASSIFICATION    □ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE ▶ | DATE | TIME |
|---|---|---|---|---|
| REVIEWED BY: (SIGNATURE) ▶ | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ▶ | DATE | |
| □ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | | DATE | TIME |

CDC 115 (7/88)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**

PAGE __i__ OF __i__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V-34099 | WILLIAMS | D07-10-0024 | CSP-LAC | 10/19/07 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☒ 115 CIRCUMSTANCES   ☐ HEARING   ☐ IE REPORT   ☐ OTHER _____

(Circumstances continued from CDC-115)

As I read the subject letter, I immediately determined that it had been written to me, as it contained several personal comments that applied only to me, and that it was from someone who claimed to be coming into a lot of money from a lawsuit. Other documents in the packet of paperwork contained WILLIAMS' name as a party to such a lawsuit. The nature of the subject letter was of a personal nature, describing me as being down to earth, compassionate, and that he was drawn to my intellect. The subject letter also asked me to take a course in buying foreclosure property. After reading the letter, I turned the entire packet of paperwork over to my supervisor, Doctor S. McGuinness, Ph.D, and informed her that I did not want WILLIAMS to be around me anymore as I felt threatened by his romantic and personal letter.

WILLIAMS is a participant in the Mental Health Services Delivery System at the Enhanced Outpatient Program level of care.

WILLIAMS is aware of this report.

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| S. (illegible) RN | | |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | | |

CDC 115-C (5/95)

OSP 99 25082

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER<br>V-34099 | INMATE'S NAME<br>WILLIAMS | | VIOLATED RULE NO(S).<br>3013 | DATE<br>10/19/07 | INSTITUTION<br>CSP-LAC | LOG NO.<br>07-10-0074 |
|---|---|---|---|---|---|---|

| REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT | ☐ YES | ☒ NO |
|---|---|---|

## POSTPONEMENT OF DISCIPLINARY HEARING

| I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE<br>▶ | DATE |
|---|---|---|
| I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE<br>▶ | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|

| I REVOKE my request for postponement. | INMATE'S SIGNATURE<br>▶ | DATE |
|---|---|---|

## STAFF ASSISTANT

| STAFF ASSISTANT<br>☐ REQUESTED    ☐ WAIVED BY INMATE | INMATE'S SIGNATURE<br>▶ | DATE |
|---|---|---|
| ☒ ASSIGNED | DATE | NAME OF STAFF | | |
| ☐ NOT ASSIGNED | REASON | | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE<br>☒ REQUESTED    ☐ WAIVED BY INMATE | INMATE'S SIGNATURE<br>▶ | DATE |
|---|---|---|
| ☐ ASSIGNED | DATE | NAME OF STAFF | | |
| ☐ NOT ASSIGNED | REASON | | | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

| ☐ REPORTING EMPLOYEE | ☐ STAFF ASSISTANT | ☐ INVESTIGATIVE EMPLOYEE | ☐ OTHER _____ | ☐ NONE |
|---|---|---|---|---|

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| _____ | ☐ | ☐ | _____ | ☐ | ☐ |
| _____ | ☐ | ☐ | _____ | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE<br>▶ | | DATE |
|---|---|---|---|
| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE)<br>▶ | TIME | DATE |

CDC 115-A (7/88)    — *If additional space is required use supplemental pages* —

# EXHIBIT   J

# Declaration Of Emest Napper Jr.

I, Emest Napper Jr, do declare:

1.) I am an inmate incarcerated at the California Department of Corrections and Rehabilitation at the California State Prison- Los Angeles County, under registry # P82134 and if called as a witness to testify to the following facts which are within my personal knowledge I could and would compently testify thereto.

2.) On October 30, 2007 around 3:30 PM, while in Administrative Segregation in cell A4-133↳, I witnessed Plaintiff John Williams V-34099 speaking with Associate Warden Wooford concerning his placement in segregation for unlawful influence, at which time Plaintiff complained to Woodford of being exploited with segregation; in retaliation for complaints to the Federal Bureau of Investigations related to Excessive Force imposed upon Mental Health inmates on D-Facility.

3.) That in response to Plaintiff's allegations, Associate Warden Wooford smiled mischeviously and stated "your right, your absolutely right Mr. Williams, but we had to slow you down some kind of way", at which time Wooford then departed from Plaintiff's cell door.

I declare under the penalty of perjury, under the laws of the State of California the foregoing is true and correct. Executed on NOVEMBER 30, 2007 at Lancaster, Calif.

signature:

Emest Napper Jr.
P82134 Declarant

QUESTIONS For Captain Parker

1. WHICH STAFF members brought This incident To Your attention on 10.23.07.

2. WHY ARE You allowing morrissette To Exploit State resources by alleging a safety concern simply To Justify holding billions in Segregation.

3. WHAT is morrissette's discipline for disclosing personal information about himself To Williams?

4. If morrissette signed a CDC 128-in 1?

and violated Such policy and regulations (regarding Gangs and association with Inmates) how Could You Consider morrissette a Threat To the safety and Security of Your facility?

5. Isn't it True That by removing Williams from the facility on the bogus safety concern You Set To Appear as if Your addressing The Concerns Which But You in The Captains Chair on a facility in the face of Warden Holos and outside agencies.

QUESTIONS FOR RETURNING EMPLOYEE MARY ISSETTE

WHAT does Williams address you as?

. has Williams ever referred to you as Lady Cool?

. has Williams ever spoke to you in a romantic language?

has Williams ever confessed a romantic interest in you?

are You an attorney or do you work for an attorney?

. does the portions of Williams letter which makes reference to attorneys relate to you personally?

. WHAT EVIDENCE do you have to support your "feeling" f being threatened by Williams?

PLEASE explain WHAT MADE Williams letter Personal.

PLEASE explain WHAT MADE Williams letter romantic.

. PLEASE define romantic as used in your EVE report.

. did Williams letter request any personal information from you?

2. In determining that Williams letter was written to you, what "several personal comments" do you contend applied to you?

3. did the entire letter itself apply to you, if not PLEASE explain.

1. How did Williams become aware of the information which you describe as "several personal comments"?

. WHY was Williams giving you a packet of paperwork in the first place?

. is this the only time Williams had ever given you a packet of paperwork?

2. WHEN was the first time Williams gave you packets of paperwork and why?

. did you ever request legal advice/assistance from Williams?

9. has Williams ever defyed your authority or disrupted any of your classes?

o. You stated that the personal letter was "secreted" in pack of paperwork; how much paperwork was this personal etter secreted behind or within?

l. is it "possible" that this personal letter could have ossibley been in the packet of papers by mistake or error?

c. what evidence or proof do you have that this personal etter did not make its way in the packet of paperwork by mistake or error?

3. do you contend that finding someone "down to earth" is a omantic gester?

4. do you contend that finding someone compassionate is a omantic gester?

5. do you contend that being drawn to someones intellect s a romantic gester?

s. isn't it true that Williams gave you packets of paper work ? early August 2007 and not on october 2007?

7. why did you disclose personal information about yourself e williams concerning personal comments which you allege nly apply to you?

8. have you been disciplined or subjected to adverse personel action as a direct result of your disclosing personal formation about yourself to williams.

7. at one point prior to receiving the personal letter secreted n the packet of paperwork, didn't you inform williams that te real estate market was not good for investments?

o. isn't it true that twice in late August and early september Williams informed of giving you paperwork in error which you efused to return?

l. isn't it true that you only filed this EVR after Dr. E.

12. WHY did as of paperwork given to you by williams?

13. did any of the paperwork given to you by Williams ever leave State grounds while in your possession?

14. isn't it true that Dr. McGuinness became involved in this matter on specifically October 22, 2007?

5. did the personal letter ask you to do anything illegal?

6. PLEASE explain how you allege that the personal letter was secreted in the packet of paperwork but then later allege that the packet had been addressed to Lade Cool?

7. PLEASE explain how the personal letter attempted to bribe you, if at all?

8. PLEASE explain if the personal letter made a specific threat towards you?

9. were you aware that State employees must not discuss their personal affairs with inmates or parolees?

10. do you admit that you violated State policy by discussing or disclosing your personal affairs with williams?

QUESTIONS for inmate witness Hackman #S2167
CELL A4 113

. are you familiar with inmate williams #V-3407?
. do you recall an incident where social worker morrissette
did personal intervention to inmate williams and requested
legal assistance?
. PLEASE explain?
. do you recall williams ever giving morrissette a packet of
paperwork?
. if so when did you witness this month and year?
. during group with morrissette on October 12, 2007 did you
see williams give morrissette anything?

QUESTIONS

. isn't it true that on October 22, 2007, You summoned
Williams from his cell for a brief one on one interview?

. how soon after this interview did You become aware of
le personal letter alleged by S-Marcsettee?

did You personally take this information to captain Parker
long with counselor Cruz?

during Your 10-22-07 interview with Williams, did Williams
late any mention of Marcissettee and paperwork which
had not been returned to him by Marcissettee?

. did You ever contract Marcissettee regarding this
issue prior to Marcissettes own disclosure to You?

Please explain why you didn't or failed to impose discipline
. inmate Zuniga when Zuniga gave a personal gift card to
Ichelle Reed prior to her departure?

isn't it true that Your role and involvement in this issue is
our way of reprisal for Williams litigations and complaints
jainst You?

Please explain why You did not report Marcissette's violation
. Policy in disclosing personal information about herself to
Williams.

### Questions for inmate Wilson D1-104

Are You familiar with inmate Williams #V-34097?

. do you ___ recall on or about october 16, 2007, while
aiting in line for law library inmate Williams confronted
censed clinical Social worker S.Marcissette regarding
gal papers he had given to her, and demanded back?

. do you recall Marcissette's response to Williams advising
hat he wanted his legal papers and attorney client
communications back due to disclosing sent to her in error?

# EXHIBIT K

Administrative Segregation Unit Classification
Committee Members:
California State Prison Los Angeles County:

November 1, 2007

Dear Segregation Committee Members;

Please take notice that Plaintiff John W. Williams
hereby request the presence of witnesses, to include
the Rules Violation Reporting Employee Marrissette, and
the submission of documentary evidence; to include
the investigative Employee's (I.E.) report.

This request will be made on the ground that the
primary purpose of this initial hearing on the administrative
segregation order is to determine the need for Plaintiff's
continued retention in administrative segregation; and it
is Plaintiff's firm position that I am not a threat to
another person, safety, or security; the same as the
reporting Employee (Marrissette) is no more frightned or
jeopordous by me at my presence as was when she
(Marrissette) initiated and participated in the disclosure
of personal information and communications prior to and
during this incident; and to allow Marrissette to now
hide behind a false; bogus, and fabricated safety concern
is not only despicable; but a miscarriage of justice.

This written request for postponement in order to
produce witnesses and documentary evidence is based
upon Cal. Code of Reg, Title 15 section(s) 3337 (Review
of Segregation order) (b) and 3338 Hearing an
Segregation Hearing order) (a) - through (i); including the
14th and 6th amendments to the U.S. Constitution.

Respectfully submitted;

J.W.L.  11-1-07:

John W. Williams #V34689

A4 - 105∠

State of California                                                          Department of Corrections
                                                                             CDC 128-G

No. V-34099                    NAME:  WILLIAMS

*Comment*:      **60 day ASU extension from ICC action of 11-1-07 approved to complete adjudication of
pending RVR of 10-19-07 for Unlawful Influence.**

Return to CSR no later than 12/31/2007 with status update.

                                    D. Felix, CSR

Date:  11/13/2007              **Classification - CSR ACTION**              **LAC**

[ ] C.C.C.M.S.    [X] E.O.P.    [ ] CLEAR

STATE OF CALIFORNIA                              DEPARTMENT OF CORRECTION
## RULES VIOLATION REPORT
804 TO RECORDS:

| INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|
| HARMON | | CSP-LAC | FD-B1-118L | D07-10-003 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3015(a) | OUT OF BOUNDS | FD-EDUCATION | 10/24/07 | 1040 Hour |

CIRCUMSTANCES

On Wednesday, October 24, 2007, at approximately 1040 Hours while performing my duties as a Licensed Clinical Social Worker (LCSW), Enhanced Outpatient Program (EOP), I was in the Facility-D, Education Building, Room #4, in a Managing Depression 4 Group. Between 1030 and 1130 Hours, Inmate HARMON, H████, FD-B1-118L, entered the room and attempted to give me a folded paper with unknown information. I informed HARMON that his name did not appear on the Group Roster and that he was "Out of bounds." However, HARMON continued to attempt to leave said paper. I directed him to leave the room, to return to his assigned group, and to take the paper with him. HARMON was compliant and left the room with the paper.

HARMON is a participant in the Mental Health Delivery System at the Enhanced Outpatient Program level of care. HARMON is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ S. Morrissette, LCSW. | | | EOP Licensed Clinical Social Worker | S/S |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|---|
| ▶ P. Puerta, Correctional Sergeant | | | DATE _____ LOC. _____ | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☐ SERIOUS | | | ▶ L. Parker, Facility-D Captain | ☐ HO  ☐ SHO  ☐ SC  ☐ FC |

### COPIES GIVEN INMATE BEFORE HEARING

| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| | ▶ | | | | | |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
| | ▶ | | | ▶ | | |

HEARING

REFERRED TO ☐ CLASSIFICATION    ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|---|
| | | | ▶ | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | | DATE | |
|---|---|---|---|---|---|
| ▶ | | ▶ | | | |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | | DATE | TIME |
|---|---|---|---|---|
| | ▶ | | | |

CDC 115 (7/88)

EXHibiT

L

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V-34099 | WILLIAMS | D07-10-0024 | CSP-LAC | 11-13-07 |

☐ SUPPLEMENTAL | ☐ CONTINUATION OF: ☐ CDC 115 CIRCUMSTANCES ☐ HEARING ☒ I.E. REPORT | ☐ OTHER: _____

## INVESTIGATIVE EMPLOYEE'S REPORT

On **11-13-07**, I, Correctional Officer A.M. Boak was assigned as the Investigative Employee for RVR Log Number D07-10-0024. S. Morrissette submitted the RVR on **WILLIAMS** for violation of the California Code of Regulations, Title 15, Section 3013 UNLAWFUL INFLUENCE. I informed **WILLIAMS** of my assignment and advised him that my role as the IE is as a fact finder for the Senior Hearing Officer (SHO). **WILLIAMS** had no objection to my serving in this capacity.

On **11-13-2007**, Correctional Officer M. Jamerson (Inmate Staff Assistant) and I interviewed Inmate **WILLIAMS**, V-34099 housed at CSP-LAC, FAB4-149L regarding the aforementioned RVR. Inmate **WILLIAMS** accepted C/O Jamerson for his staff Assistant and said he understood the charge . Inmate **WILLIAMS** did request witnesses be interviewed.

Inmate **WILLIAMS did** request the presence of Staff Witnesses (LCSW S. Morrissette) and did not request the presence of this Investigative Employee at the hearing. Inmate **WILLIAMS** has received all pertinent Supplemental Reports

**DEFENDANT'S STATEMENT**: Inmate WILLIAMS made the following statement: "This incident is a mistake as a result of my being careless, and though mistakes are expected in humans, my mistake has seen wrongfully perceived as an act to gain favor or special consideration based on letter which is so clearly and obviously intended for someone other then Morrissette. Morrissette purports in her rules violation report that several personal comments related to her personal experience with food poisoning made her aware that the letter in question was mend for her however, noting in this letter mention anything about Morrissetee's personal experience with being food poisoned. In addition, I've never wrote to Morrissette collect, nor do I know any of Morrissette's family or friends. Despite such clear and obvious facts, my mistake will be exploited and made to look in intentional to justify hiring authorities plan to have me adversely removed from CSP-LAC for my legal activity."

**REPORTING EMPLOYEE'S STATEMENT**: S. Morrissette provided the following testimony:

Q: What does WILLIAMS address you as?
A: Morrissette.
Q: Has WILLIAMS ever referred to you as "Lady Cool"?
A: In the letter only.
Q: Has WILLIAMS ever spoke to you in a romantic language?
A: In the letter only.
Q: Has WILLIAMS ever confessed a romantic interest in you?
A: In the letter only.
Q: Are you an attorney or do you work for an attorney?
A: Irrelevant.
Q: Does the portions of WILLIAMS's letter, which make reference to attorneys, relate to you personally?
A: Ask WILLIAMS.
Q: What evidence do you have to support your "feeling" of being threatened  by WILLIAMS?
A: Irrelevant.
Q: Please explain what made WILLIAMS letter personal?
A: Irrelevant.
Q: Please explain what made WILLIAMS letter romantic?
A: Irrelevant.
Q: Please define romantic as used in your RVR report?
A: Irrelevant.
Q: Did WILLIAMS's letter request any personal information from you?
A: No.

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| **Correctional Officer A.M. Boak** | | 11/19/07 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | 11/19/07 | 1215 |

CDC 115-C (5/95)

**RULES VIOLATION REPORT - PART C**

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V-34099 | WILLIAMS | D07-10-0024 | CSP-LAC | 11-13-07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: ☐ CDC 115 CIRCUMSTANCES ☐ HEARING ☒ I.E. REPORT | ☐ OTHER: |
|---|---|---|

Q: In determining that WILLIAMS letter was written to you, what "several personal comments" do you contend applied toy you?
A: Not Applicable.
Q: did the entire letter itself apply to you, if not please explain?
A: Irrelevant.
Q: How did WILLIAMS become aware of the information, which you describe as several personal comments?
A: Use of imagination.
Q: Why was WILLIAMS giving you a packet of paper work in the first place?
A: Ask WILLIAMS.
Q: Is this the only time WILLIAMS had ever given you a packet of paperwork?
A: Yes.
Q: did you ever request legal advice/assistance from WILLIAMS ?
A: No.
Q: Has WILLIAMS ever defied your authority or disrupted any of your classes?
A: Irrelevant.
Q: You stated that the personal letter was "secreted" in a pack of paper work, how much paperwork was this personal letter secreted behind or within?
A: No longer have packet of paperwork.
Q: Is it possible that this personal letter could have possible been in the packet of papers by mistake or error?
A: No.
Q: What evidence or proof do you have that this personal letter did not make its way in the packet of paperwork by mistake or error?
A: No proof.
Q: You contend that finding someone "down to earth" is a romantic gesture?
A: yes.
Q: Isn't it true that WILLIAMS gave you packets of paperwork in early August 2007 and not on October 2007?
A: No.
Q: Why did you disclose personal information about yourself to WILLIAMS concerning personal comments which you allege only to you?
A: Irrelevant.
Q: Have you been disciplined or subjected to adverse personnel action as a direct result of your disclosing personal information about yourself to WILLIAMS?
A: Irrelevant.
Q: At one point prior to receiving the personal letter secreted in the packet of paperwork, didn't you inform WILLIAMS that the real estate market was not good for investments?
A: Never.
Q: Isn't it true that twice in late August and early September WILLIAMS informed of giving you paperwork in error which you refused to return?
A: No.
Q: Isn't it true that you only filed this RVR after Dr. E. Mcguinness became aware and involved?
A: No.
Q: Why did you wait so long before reviewing the packet of paperwork given to you by WILLIMAS?
A: No time.
Q: did any of the paperwork given to you by WILLIAMS ever leave state grounds while in your possession?
A: Irrelevant.
Q: Isn't it true that Dr. Mcguinness became involved in this matter on specifically October 22, 2007?
Q: Irrelevant.
Q: did the personal letter ask you to do anything illegal?

| SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|
| Correctional Officer A.M. Boak | | 11/19/07 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE    L.M.Boak | 11/19/17 | 1215 |

CDC 115-C (5/95)

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V-34099 | WILLIAMS | D07-10-0024 | CSP-LAC | 11-13-07 |

| ☐ SUPPLEMENTAL | ☐ CONTINUATION OF: ☐ CDC 115 CIRCUMSTANCES  ☐ HEARING  ☒ I.E. REPORT | ☐ OTHER: _____ |
|---|---|---|

A: yes.

Q: Please explain how you allege that the personal letter was secreted in the packet of paperwork but then later allege that the packet had been addressed to lady cool?

A: Lady cool letter in the package.

Q: Please explain how the personal letter attempted to bribe you, if at all?

A: Irrelevant.

Q: Please explain if the personal letter made a specific threat towards you?

A: Made me uncomfortable.

Q: Were you aware that state employees must not discuss their personal affairs with inmates or parolees?

A: Irrelevant.

Q: Do you admit that you violated state policy by discussing and disclosing your personal affairs with WILLIAMS?

A: Irrelevant.

**STAFF WITNESS:** (Captain L. Parker) provided the following testimony:

Q: Which staff members brought this incident to your attention on 10-23-07?

A: Dr. Mcguinness and CC-I Cruz.

Q: Why are you allowing Morrissette to exploit state resources by alleging a safety concern simply to justify holding WILLIAMS in segregation?

A: I am responsible for the safety of staff and inmates, therefore if staff or inmate have safety concerns I will initiate a security action thorough investigation.

Q: What is Morrissette's discipline for disclosing personal information about herself to WILLIAMS?

A: Irrelevant, Confidential. The CDC does not disclose such information.

Q: If Morrissette signed a CDC 181 and violated such policy and regulations regarding conduct and association with inmates how could you not consider Morrissette a threat to the safety and security of your facility?

A: Irrelevant, I can not house Morrissette.

Q: Isn't it true that by removing WILLIAMS from the facility on the bogus safety concern you get to appear as if your addressing the concerns which put you in the captains chair on "D" Facility in the face of Warden haws and outside agencies.?

A: This has no merit.

**STAFF WITNESS:** Dr. Mcguinness provided the following testimony:

Q: Isn't it true that on October 22, 2007 you summoned WILLIAMS from his cell for a brief one on one interview?

A: I don't remember.

Q: How soon after this interview did you become aware of the personal letter alleged by S. Morrissette?

A: Not aware of the letter until the next day.

Q: Did you personally take this to Captain Parker and along with counselor Cruz?

A: Yes.

Q: during your 10-22-07 interview with WILLIAMS, did WILLIAMS make any mention of Morrissettee and paperwork which had not been returned to him by Morrissette?

A: No.

Q: please explain why you didn't or failed to impose discipline on inmate ZUNIGA when ZUNIGA gave a personal gift card to Michelle Reed prior to her departure?

A: I do not discuss any patient with another patient.

Q: Isn't it true that your role and involvement in this issue is your way of reprisal for WILLIAMS litigations and complains against you?

A: No.

Q: Please explain why did you not report Morrissette's violation of policy in disclosing personal information about herself to WILLIAMS.

A: No reason to think she did disclose personal information.

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| | Correctional Officer A.M. Boak | | 11/19/07 |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | | 11/19/07 | 1215 |

**STATE OF CALIFORNIA** )
                      )    SS:
**COUNTY OF LOS ANGELES** )    (C.C.F.,§446 & §2015.5; 28 U.S.C.,§1746)

I, _John W. L. Williams_ , declare under penalty of perjury that:

I am the _Plaintiff_ , in the above-entitled action; I have read the foregoing documents and know the contents thereof: and the same is true of my own knowledge, except as to those matters stated therein upon informati and belief, and as to those, I believe them to be true.

Executed this _28th_ day of _November 07_, at California State Prison - Lancaster, California 93536-762(

Signature: _____
(Declarant/Petitioner)

••••••••••••••••••••••••••••••••••••••••••••••••••••

## PROOF OF SERVICE

### [C.C.F., §446 & §2015.5; 28 U.S.C.,§1746]

I, _John W. L. Williams_ , am a resident of California State Prison - in the County of Los Angeles, State of California. I am over the age of eighteen (18) and AM/AM NOT a party of the above-entitled action. M State Prison address is: 44750 60th Street West; Lancaster, California 93536-7620.

On _November 28, 2007_ I served the following documents:

B32.5 CITIZEN'S COMPLAINT PURSUANT TO THE CIVIL RIGHTS ACT OF 1964
FOR CONSPIRACY AGAINST RIGHTS, RETALIATION, AND CRUEL AND UNUSUAL PUNISHMENT
IN VIOLATION OF TITLE 18 UNITED STATES CODE SECTION'S 241, 242, AND 245; 1st, 6TH, 8TH
AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION WITH ORGANIZED (Set forth the exact title of document(s) served)
CRIMINAL ACTIVITY AND
MALFEASANCE:
       On the party(ies) herein by placing a true copy(ies) thereof, enclosed in sealed envelope(s), with postage thereon fully paid. or with a Trust Withdrawal Slip (CDC-190) attached thereof, in the United States Mail, in the manner provided by at the California State Prison. Lancaster. California 93536-7620, addressed as follows: CLARTIE CENTER

| U.S. DEPARTMENT OF JUSTICE FEDERAL BUREAU OF INVESTIGATION CONNIE E. SMITH SUPERVISORY SENIOR RESIDENT AGENT/F.B.I. CODE 3B19 VENTURA, CALIF 93006 | SUPERIOR COURT OF CALIF COUNTY OF LOS ANGELES GRAND JURY FORM 210 W. TEMPLE STREET LOS ANGELES, CALIF 90012 | LEGAL AID SOCIETY- EMPLOYMENT LAW CENTER 600 HARRISON ST, SUITE #120 SAN FRANCISCO, CA 94107 |
| OFFICE OF INSPECTOR GENERAL ERCY McCLELLAN DEPUTY SPECIAL GENERAL SENIOR F.B.I. CODE 34B7B0, SACRAMENTO, CA | OFFICE OF INTERNAL AFFAIRS F.B.I. CODE 3B009 SACRAMENTO, CA | ASSOCIATE WARDEN R. W. DIPPEL CSP-LOS ANGELES COUNTY 44750 60 TH ST WEST LANCASTER CALIF 93536 |

There is delivery service by the United States mail at the place so addressed and/or there is regular communication by mail between the place of mailing and the place addressed. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 11/28/07

_____
Declarant/Petitioner